799 P.2d 658 (1990)
104 Or.App. 27
Jessica VOLK, an Individual; Beverly Enterprises, Inc., Dba Beverly Enterprises, Dba Raleigh Care Center, a California Corporation; Graystone Manor Convalescent Center, an Oregon Corporation; and Care Center (Franklin) Inc., Dba Franklin Care Center, an Oregon Corporation, Respondents,
v.
STATE OF OREGON, by and through Its Department of Human Resources, Senior Services Division, and Richard C. Ladd, Director, Senior Services Division, Appellants.
87-0640C; CA A50092.
Court of Appeals of Oregon.
Argued and Submitted February 9, 1990.
Decided October 17, 1990.
*659 Robert M. Atkinson, Asst. Atty. Gen., Salem, argued the cause for appellants. With him on the briefs were Dave Frohnmayer, Atty. Gen., and Virginia L. Linder, Sol. Gen., Salem.
Rick T. Haselton, Portland, argued the cause for respondents. With him on the brief were Thomas E. McDermott, Margaret Murphy Carley and Lindsay, Hart, Neil & Weigler, Portland.
Before BUTTLER, P.J., and WARREN and ROSSMAN, JJ.
BUTTLER, Presiding Judge.
Plaintiffs, three privately owned nursing care facilities and a resident of one of the facilities, brought this declaratory judgment proceeding, alleging that they have been deprived by defendants of rights secured to them by federal law. 42 U.S.C. § 1983.[1] They seek a declaration that Medicaid reimbursement rates established by the Department of Human Resources, Senior Services Division (DHR), pursuant to Medicaid plan amendments effective July 1, 1986, are invalid. They also pray that DHR be enjoined from reimbursing them under the allegedly invalid rates and that it be required to reimburse them pursuant to the rates established under the previous plan for all periods during which the invalid plan has been applied and until a new, valid plan is adopted and approved. The trial court invalidated the plan and ordered DHR to reimburse plaintiffs under the previous plan for the period of July 1, 1986, to June 30, 1987. DHR appeals.
The Medicaid program, embodied in Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq (the Act), was enacted by Congress in 1965 to provide federal financial assistance to states to enable them to furnish medical assistance to aged, blind or disabled persons "whose income and resources *660 are insufficient to meet the costs of necessary medical services." 42 U.S.C. § 1396; see Wilder v. Virginia Hospital Assn., 496 U.S. ___, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). The Act is administered at the federal level by the Secretary of Health and Human Services (the Secretary).
Medicaid is a voluntary program in which the state makes the decision whether to participate. If it chooses to participate, it must provide care for eligible persons in accordance with certain minimum federal standards. It must also designate a single state agency to administer the program, 42 U.S.C. § 1396a(a)(5), draw up a medical assistance plan consistent with the guidelines in the Act and the regulations promulgated thereunder and submit it to the Secretary for approval. After approval of the plan, the state becomes eligible for federal reimbursement for a portion of the expenditures made in providing specific types of medical assistance to eligible individuals. 42 U.S.C. § 1396a(a). Oregon has elected to participate in Medicaid. The Senior Services Division of DHR is responsible for administering the Oregon Medicaid program. ORS 410.070. The federal government pays Oregon approximately 61 percent of the state's program costs.
When it was enacted in 1965, the Act assigned to the federal government the primary responsibility for its administration and for determination of reimbursement rates. Federal law required that Medicaid providers be reimbursed for their "reasonable costs," former 42 U.S.C. § 1396a(a)(13)(A), which meant, in practical terms, that providers were generally reimbursed for 100 percent of their actual costs. The Secretary was responsible for the adoption of standards for reimbursement. In 1972, Congress amended the Act to give states more flexibility to develop methods and standards for reimbursement, but the law still required that reimbursements be made for the "reasonable cost" of the services provided. The state's methods and standards for reimbursement were to be reviewed and approved by the Secretary.
The Boren Amendment, enacted in 1980, greatly reduced the federal government's role in the administration of the Act. It deleted the requirement that states reimburse providers on a reasonable cost basis and substituted the requirement that states reimburse at rates that are "reasonable and adequate to meet the cost which must be incurred by efficiently and economically operated facilities in order to meet applicable laws and quality and safety standards." 42 U.S.C. § 1396a(a)(13)(A). The Act now requires states to identify facilities that are efficient and economical and to reimburse them for their full costs. Facilities that are operating less than efficiently and economically are reimbursed for less than their costs. The state may determine in advance the amount of the reimbursement to be made under the plan and limit reimbursement to that amount. For example, under the rules in effect in 1986, DHR determined that a provider whose costs fell at or below the 75th percentile of industry costs was operating efficiently and economically and would be reimbursed in full. Providers whose costs exceeded the 75th percentile were reimbursed only up to that ceiling. See OAR 411-70-440.
Consistently with its objective of reducing federal involvement, the Boren Amendment eliminated the Secretary's role in determining and reviewing rates of reimbursement; it assigned that task to the states, with the additional requirement that a state find, at least annually, that the reimbursement rates are reasonable and adequate, 42 CFR § 447.253(b)(1), infra, at 663, and that it submit assurances to that effect to the Secretary when it makes any substantial change in its reimbursement rates. 42 CFR § 447.253(a).
In 1985, DHR developed a Medicaid plan, and the Secretary approved it. The state legislature appropriated $94,952,276 in general funds to the Senior Services Division to cover the costs of long-term care reimbursement for the 1985-1987 biennium. However, by October, 1985, DHR projected that continuing Medicaid reimbursement under the plan then in effect would result in a $3 million state funding deficit in 1986. With legislative approval, DHR made reimbursement *661 cuts of approximately $3.7 million, with approximately $2 million of that amount to be cut from reimbursements to nursing facilities. Those cuts resulted in a corresponding reduction in federal funding of over $3.3 million, for a total funding reduction for long term care facilities of over $5 million. In August, 1986, DHR sent a letter to the Secretary, stating that Oregon had found that the reimbursement rates in the proposed amendments were reasonable and adequate to meet all regulatory requirements. The Secretary approved the plan.
Plaintiffs' only "claim for relief" contains four "counts." Count 1 alleges that, in developing the amendments to its Medicaid plan, DHR did not make findings that the rates to be paid were reasonable and adequate to meet the requirements of federal regulations. Count 2 alleges that the plan amendments were adopted solely on the basis of budgetary constraints. Count 3 alleges that the rates established by DHR are "neither reasonable nor adequate to reimburse the costs which must be incurred by efficient and economic providers of long term care services * * *." Count 4 alleges that DHR's conduct constitutes a violation of 42 U.S.C. § 1983 and that plaintiffs are entitled to reimbursement for their attorney fees under 42 U.S.C. § 1988.
The trial court granted summary judgment for plaintiffs. The final judgment does not state on which "counts" judgment was granted. However, the two reasons given by the court for granting plaintiffs' motion describe, in substance, the first two counts of the complaint. The court "found" that DHR had cut reimbursement rates "solely to meet [DHR's] budgetary target" and that DHR's assurances to the Secretary to obtain federal approval of the plan amendments were made without facts, data or other substantial evidence to support them. The court did not decide the question raised in Count 3 of whether the rates established by DHR were, nevertheless, reasonable and adequate. Although the court did not expressly rule on Count 4, it necessarily concluded that defendants' conduct did violate section 1983; otherwise, plaintiffs had no right to adjudicate their claims in this action.[2]
Several of DHR's contentions are answered by the United States Supreme Court's opinion in Wilder v. Virginia Hospital Association, supra, decided after the initial briefing and argument in this case.[3] The parties agree that, in Wilder, the Court held that Medicaid providers have standing to bring an action under 42 U.S.C. § 1983 to challenge whether the rates established by the agency responsible for administering the state's Medicaid program are reasonable and adequate.[4] They disagree, however, as to what, if anything, Wilder says about a Medicaid provider's ability to challenge, on procedural grounds only, an agency's reimbursement plan. DHR contends that, because the two counts on which the trial court ruled raise only procedural violations and do not challenge the reasonableness and adequacy of the rates, those counts do not state a justiciable controversy.
The issue in Wilder was whether a state's procedural compliance precluded a substantive claim that the resulting reimbursement rates were not "reasonable and *662 adequate." Thus, the Court did not have before it the question of whether a provider may challenge procedural noncompliance. However, by holding that providers may ask a court to decide whether rates are reasonable and adequate, the Court strongly suggests that procedural noncompliance is actionable in and of itself. The majority said:
"[W]e conclude that the Medicaid Act creates a right enforceable by health care providers under § 1983 to the adoption of reimbursement rates that are reasonable and adequate to meet the costs of an efficiently and economically operated facility that provides care to Medicaid patients. The right is not merely a procedural one that rates be accompanied by findings and assurances (however perfunctory) of reasonableness and adequacy; rather the Act provides a substantive right to reasonable and adequate rates as well." 496 U.S. at ___, 110 S.Ct. at 2517, 110 L.Ed.2d at 467. (Emphasis supplied.)
It also said:
"Petitioners concede that the Boren Amendment requires a State to provide some level of reimbursement to health care providers and that a cause of action would lie under § 1983 if a State failed to adopt any reimbursement provision whatsoever. * * * Petitioners also concede, as they must, that a State is required to find that its rates are reasonable and adequate and to make assurances to that effect to the Secretary. * * * The dissent, although acknowledging that the State has these obligations, apparently would hold that the only right enforceable under § 1983 is the right to compel compliance with these bare procedural requirements. * * * We think the Amendment cannot be so limited. Any argument that the requirements of findings and assurances are procedural requirements only and do not require the State to adopt rates that are actually reasonable and adequate is nothing more than an argument that the State's findings and assurances need not be correct." 496 U.S. at ___, 110 S.Ct. at 2519, 110 L.Ed.2d at 469. (First emphasis in original; second emphasis supplied; footnote omitted.)
We understand the Wilder majority opinion to say that a provider may, under § 1983, challenge in court the substance of the state's findings as well as the procedural requirement for findings.[5] We conclude that the procedural requirements of the Act are separate from the substantive requirement that the rates be reasonable and adequate and that they are separately enforceable.
The next issue is whether, and to what extent, the state is required by the Act actually to make findings to support its assurances to the Secretary that it has made those findings. Plaintiffs contend that the state is required to "conduct factfinding," which presumably would include a hearing, an opportunity for public comment and making written findings. DHR contends that it has no obligation to provide *663 APA-type procedures or to make written findings and that it is enough that the state "employ some reasonably principled means" to determine that the reimbursement is reasonable and adequate and provide assurances to the Secretary to that effect. We believe that the correct answer is somewhere in between those positions.
There is no doubt that Congress contemplated that a state would make findings. The Boren Amendment requires that a state's Medicaid plan provide for reimbursement to providers of Medicaid long term care services on the basis of rates that "the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations and quality and safety standards * * *." 42 U.S.C. § 1396a(a)(13)(A). The Secretary has promulgated regulations implementing the Act and its amendments that expressly require that a state make findings. 42 CFR § 447.253 provides, in part:
"(a) State assurances. In order to receive [the Secretary's] approval of a significant State plan change in payment methods and standards, the Medicaid agency must make assurances satisfactory to [the Secretary] that the requirements set forth in paragraphs (b) through (g) of this section are being met * * *[.]
"(b) Findings. Whenever the Medicaid agency makes a significant change in its methods and standards, but not less often than annually, the agency must make the following findings:
"(1) Payment rates. (i) The Medicaid agency pays for in-patient hospital services and long-term care facility services through the use of rates that are reasonable and adequate to meet the costs that must be incurred by efficiently and economically operating providers to provide services in conformity with applicable State and Federal laws, regulations and quality or safety standards * * *."
Language in Wilder also gives support to the conclusion:
"The United States, as amicus curiae, argues that the statute requires only that a State provide assurances to the Secretary that its rates comply with the statute and that assurances do not give rise to enforceable rights. * * * This interpretation ignores the language of the statute that requires a State to find that its rates are `reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities' and to assure that eligible individuals have `reasonable access' to services. See also 42 CFR § 447.253(b) (1989); 48 Fed Reg 56051 (1983). * * * The requirement that a State make such a finding is a necessary prerequisite to the subsequent requirement that the State provide `assurances' to the Secretary. That the requirements are separate obligations is apparent from the Secretary's regulations. A State must make findings at least annually, but does not need to make assurances unless the state plan is amended. 42 CFR § 447.253(a), (b) (1989). Moreover, the Secretary's interpretation of his role under the statute  that he will review the reasonableness of the assurances presented by a State rather than the findings themselves  is based entirely on his understanding that a State has the responsibility to find that its rates are adequate before making assurances to the Secretary. See 48 Fed Reg 56050 (1983) * * *." 496 U.S. at ___ n. 11, 110 S.Ct. at 2519 n. 11, 110 L.Ed.2d at 469 n. 11. (Emphasis in original.)[6]
*664 We conclude that Congress and the Court intended that the state's assurances be supported by actual findings and that the state engage in bona fide factfinding before making assurances to the Secretary that it has done so. Any other conclusion would make a sham of the requirement for findings and assurances based on them.
The state's findings must not only be sufficient to support its assurances; they must be capable of being reviewed. DHR did not purport to make any written findings concerning the reasonableness and adequacy of the proposed reimbursements. Almost all of the documents submitted by DHR address budgetary concerns. Contrary to conclusory statements contained in affidavits submitted by DHR in opposition to plaintiffs' motion for summary judgment, there is no evidence that DHR made reviewable findings. The trial court correctly granted summary judgment to plaintiffs on their first count. We need not decide, therefore, whether judgment was properly granted on the second count.
The remaining question is what, if any, remedy is appropriate and available to plaintiffs once it is established that the 1986 amendments to the plan were not properly promulgated. The trial court declared the plan amendments "invalid and without legal effect" and that plaintiffs should be reimbursed under the previous plan "for the time period of July 1, 1986, through June 30, 1987."
Plaintiffs ask us to affirm the trial court judgment. DHR contends that, before plaintiffs are entitled to any form of relief, they must show that DHR's reimbursement rates under the invalid plan were not reasonable and adequate, as alleged in the unresolved third count of the complaint. In view of our conclusion that plaintiffs have a right to challenge the process of adopting reimbursement rates, there must be some remedy for a procedural violation. At a minimum, plaintiffs are entitled to have the flawed plan invalidated and to have the state promulgate a new plan. As the Supreme Court stated in Wilder v. Virginia Hospital Assn., supra, 496 U.S. at ___ n. 18, 110 S.Ct. at 2523 n. 18, 110 L.Ed.2d at 474 n. 18:
"If a State errs in finding that its rates are reasonable and adequate, or in supplying assurances to that effect to the Secretary, then a provider is entitled to have the court invalidate the current state plan and order the State to promulgate a new plan that complies with the Act." (Emphasis supplied.)
DHR contends that, if plaintiffs are entitled to any remedy, their exclusive remedy is the invalidation of the current plan and the promulgation of a valid plan. Plaintiffs, on the other hand, contend that invalidation of the current plan carries with it the requirement that providers be reimbursed in accordance with the prior, validly promulgated and approved plan for the entire time during which the invalid plan was in effect and until a new plan is promulgated. As we have stated, the judgment, which plaintiffs seek to affirm, invalidates the plan amendments and provides for reimbursement pursuant to the previous plan from July 1, 1986, to June 30, 1987.
We agree with plaintiffs that, on invalidation of plan amendments, reimbursements must be made pursuant to the previous unamended plan.
Affirmed.
NOTES
[1] Section 1983 provides, in part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities, secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
[2] DHR contends that the first two counts do not state claims in and of themselves and therefore are not complete without the fourth count. It argues that, because the judgment does not expressly resolve the fourth count, it does not adjudicate a justiciable claim and is not appealable. We think that it is clear that the fourth count does nothing more than provide the legal predicate for relief under the facts alleged in the other three counts. It is the only allegation that does so. In granting summary judgment, the court implicitly determined that plaintiffs are entitled to relief under 42 U.S.C. § 1983 for the reasons alleged in Counts 1 and 2. Failure expressly to grant judgment to plaintiffs on the fourth count does not render the judgment non-appealable. Although Count 3 has not been resolved, the judgment complies with ORCP 67 B.
[3] We held this case pending the United States Supreme Court's decision in Wilder. After that decision, the parties submitted thorough and helpful supplemental briefs.
[4] The question of standing with respect to plaintiff Volk is thereby rendered moot.
[5] The correctness of this view becomes apparent when the majority's opinion is read in the context of the disagreement that the majority had with the dissent. The discussion in the quoted paragraphs is directed at the issue of whether a facility may challenge a state's substantive findings that reimbursement rates are reasonable and adequate. However, the emphasized language draws a distinction between the right to challenge substantive findings and the right to challenge "bare procedural requirements" that the state make findings and assurances. The majority's discussion recognizes the dissent's view that only the procedural requirements should be subject to challenge under 42 U.S.C. § 1983. Chief Justice Rehnquist, dissenting and joined by three other justices, wrote:

"Section 1396a(a)(13)(A) establishes a procedure for establishing such rates of reimbursement. The first step requires the States to make certain findings. The second and only other step requires the States to make certain assurances to the Secretary and the Secretary  not the courts  to review those assurances. Under the logic of our case law, respondent arguably may bring a § 1983 action to require that rates be set according to that process. Indeed, establishment of rates in accordance with that process is the only discernible right accruing to anyone under § 1396(a)(13)(A)." 496 U.S. at ___, 110 S.Ct. at 2527, 110 L.Ed.2d at 478.
The majority concludes, however, that the Boren Amendment to the Medicaid Act "cannot be so limited."
[6] The Court also said:

"Petitioners acknowledge that a State may not make, or submit assurances based on, a patently false finding, * * * but insist that Congress left it to the Secretary, not the federal courts, to ensure that the State's rates are not based on such false findings. To the extent that this argument bears on the question whether the Boren Amendment creates enforceable rights (as opposed to whether Congress intended to foreclose private enforcement of the statute pursuant to § 1983 * * *), it supports the conclusion that the provision does create enforceable rights. If the Secretary is entitled to reject a state plan upon concluding that a State's assurances of compliance are unsatisfactory, * * * a State is on notice that it cannot adopt any rates it chooses and that the requirement that it make `findings' is not a mere formality. Cf. Pennhurst [State School & Hospital v. Halderman, 451 U.S. 1, 24, 101 S.Ct. 1531, 1543, 67 L.Ed.2d 694 (1981)]. Rather, the only plausible interpretation of the Amendment is that by requiring a State to find that its rates are reasonable and adequate, the statute imposes the concomitant obligation to adopt reasonable and adequate rates." 496 U.S. at ___, 110 S.Ct. at 2520, 110 L.Ed.2d at 470. (First emphasis supplied; second emphasis in original; footnote omitted.)