Argued and submitted November 21, 1995, affirmed December 24, 1996, petition for review denied May 20, 1997 (325 Or 368)

## ROBISON JEWISH HOME,
*Petitioner,*

*v.*

## SENIOR AND DISABLED SERVICES DIVISION,
*Respondent.*

(385145; CA A84714)

930 P2d 862

Christopher F. McCracken argued the cause for petitioner. With him on the briefs were Jody A. Noon and Davis Wright Tremaine.

Michael E. Livingston, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

■ Robison Jewish Home ("Robison") is a licensed nursing facility that is certified to provide nursing care to Medicaid recipients. It seeks judicial review of an order of the Senior and Disabled Services Division ("SDSD") of the Oregon Department of Human Resources on its Medicaid reimbursement rate. We review SDSD's decision for substantial evidence and errors of law, ORS 183.482, and affirm.

The Medicaid program provides federal funds to states to provide medical assistance to low-income people. 42 USC § 1396 *et seq*. In Oregon, SDSD administers the Medicaid program under which long-term care is provided to people. 42 USC§ 1396a; ORS 410.070. In administering that program, SDSD must comply with federal requirements. 42 USC § 1396r(b) outlines the services that a facility providing care to a Medicaid patient must provide, and 42 USC § 1396a(13)(A) specifies how a state is to reimburse that facility for the cost of those services.

In the Omnibus Budget Reconciliation Act of 1987 ("OBRA '87"), Congress amended 42 USC § 1396r(b) to require nursing facilities to provide services to Medicaid patients that were not previously required under the program. Pub L No 100-203, § 4211, 101 Stat 1330-182 to 1330-196. Congress amended 42 USC § 1396a(13)(A) to account for the heightened requirements in § 1396r(b). *Id.* In response to those new requirements, SDSD promulgated OAR 411-70-458 and 411-70-459 ("add-on rules").[1] Those rules were "add-on" provisions designed to supplement a facility's basic Medicaid reimbursement rate to account for the additional costs incurred by a facility due to OBRA '87. OAR 411-70-458 (1992); OAR 411-70-459 (1992).[2]

---

[1] SDSD first promulgated OAR 411-70-458 in 1989. In 1992, it was amended and OAR 411-70-459 was promulgated. The parties agree that the 1992 versions of those rules are at issue in this case. Thus, although SDSD has since amended both rules, we refer to the 1992 version of the rules throughout this opinion.

[2] The add-on rate for a facility entitled a facility to an added payment on top of its normal patient reimbursement rate until June 30, 1993, when the add-on rate was to be "blended into the overall rates." OAR 411-70-458(2) (1992).

Under the rules, each facility got an individualized add-on rate based on cost information submitted to SDSD by the facility.[3] On March 20, 1992, SDSD sent every participating facility a packet of forms to gather the necessary information on the facility's OBRA '87 costs.[4] In accordance with the rules, the primary way for a facility to show its costs to comply with the OBRA '87 requirements was through selection of a comparison period, either May 1990 to May 1991 or September 1990 to September 1991. For costs incurred outside those periods, a facility was instructed to "submit a written request and supporting data to the Division." OAR 411-70-459(13)(b) (1992).

Robison received the packet and its controller filled out the forms. He testified that he read the instructions carefully and completely, but he did not think that the forms provided a way for Robison to account for costs incurred outside the comparison period. Because Robison provided a number of services that OBRA '87 required before Robison was required to do so, the controller believed that the bulk of Robison's costs to implement OBRA '87 could not be accounted for through SDSD's initial inquiry. Although the instructions stated that "[t]he instructions should provide all information needed to claim an OBRA cost" and identified an SDSD employee who could respond to specific questions, Robison's controller did not call for instructions on how to claim costs incurred outside the comparison period. Instead, relying on information that he had gotten from discussions between affected nursing facilities and SDSD that had led to the rules that SDSD adopted, the controller concluded that Robison would have an opportunity to submit information on those

---

[3] Until that rate was determined for a facility, the facility was paid a $.37-per-patient-day add-on rate. After the individualized rate was determined, the facility and SDSD would reach a settlement under which SDSD would supplement the amount paid under the original add-on rate if it fell short of the approved costs incurred by the facility or the facility would reimburse SDSD for any overpayment. OAR 411-70-459(9) (1992).

[4] The packet included the SDSD forms, a cover letter, general "Instructions for Preparation," "General Information," an outline of the "Informal Dispute Resolution System," and instructions for completing each of the three parts of the form. In SDSD's final order, it found that the instructions did not differ from the rules in any meaningful way and that Robison had access to the rules when it filled out the forms. Robison does not challenge those findings, so we accept them as true.

claims later in an informal hearing.[5] Therefore, he selected the May 1990 to May 1991 comparison period for Robison and listed the cost of low-height beds, minimum data set forms, chart holders, computer software and an in-service director position as OBRA '87 related expenses, but he did not submit any claim for costs incurred outside the comparison period.

On August 13, 1992, a division employee conducted a "desk review" of Robison's claim form and determined that Robison was entitled to a $.01 add-on rate. The employee recommended that one half of the cost of the low-height beds and the cost of the minimum data set forms be accepted and that the cost of the chart holders, computer software and the in-service director position be denied. The division accepted that recommendation and assigned Robison a $.01 add-on-rate.

Pursuant to OAR 411-70-459(13) (1992), Robison requested an informal hearing to review that determination. On October 15, 1992, SDSD notified Robison that the informal hearing was scheduled for November 16, 1992, and stated:

> "In accordance with OAR 411-70-459(13)(a), the Informal Hearing will consider items the facility requested as an OBRA add-on cost which [were] denied all or in part by the Division. This rule also allows the facility to provide additional information on OBRA cost items proposed but not approved by the Division.
>
> "If you have not already done so, please identify *the specific* items being appealed and provide additional documentation no later than November 9, 1992."

(Emphasis in original.)

Robison sent a letter to SDSD, dated November 10, 1992, in which it argued that the process implemented by SDSD was flawed because it included no mechanism for a facility to seek compensation for costs incurred outside the selected comparison period. It argued that the procedures

---

[5] Robison submitted a number of exhibits on the discussions that had occurred between the facilities and SDSD over the adoption of the rules, but the hearings officer excluded them as irrelevant.

violated federal law and resulted in an improper decrease in Robison's add-on rate from the initial $.37-per-patient-day rate. Attached to the letter, Robison submitted a statement of costs that it asserted it had incurred to comply with OBRA '87 that had not previously been submitted to SDSD.

The informal hearing committee, which met on November 16, 1992, declined to consider the claims submitted with the November 10th letter. It concluded that, under the rules, the purpose of the informal hearing was to address only claims that had previously been denied. Thus, it reviewed only the originally denied claims and recommended by a 2-1 vote that the denials be affirmed. The division agreed with the informal hearing committee's recommendation and reaffirmed the $.01 add-on rate.

After receiving the informal hearing committee's recommendations, Robison requested a contested-case hearing pursuant to OAR 411-7-459(13)(j) (1992). Robison argued that SDSD's application of its rules conflicted with the language of the rules and with federal law. It appealed the denial of the cost items that were listed on its forms. It also argued that cost items incurred outside the comparison period, which were first raised by the November 10th letter, should be considered, and it submitted evidence to support its position that those items were OBRA '87 related. It also presented evidence on various other cost items that it claimed were OBRA '87 related.

Those arguments were all rejected in SDSD's final order, which upheld SDSD's determination that Robison was entitled to a $.01 add-on.[6] SDSD interpreted its rules to provide for an add-on when a facility could show increased costs due to a significant new action that the facility had taken to comply with OBRA '87. It agreed that the rules provided for reimbursement of costs that were incurred both inside and outside the comparison period. However, it concluded that the rules required that all claims be raised initially with the division. Thus, no cost items could be considered for the first

---

[6] The final order also affirmed the determination that, under OAR 411-70-459(9) (1992) and OAR 411-70-460(5)(a) (1992), SDSD was entitled to recover from Robison an overpayment in the amount of $6,332.

time on appeal at either the informal or contested-case hearing.

The final order stated that, although the November 10, 1992, letter could arguably be considered a written request under OAR 411-70-459(13)(b) (1992) for reimbursement of costs incurred outside the comparison period, the request failed for two reasons. First, the costs listed in the letter were not identified as being outside the comparison period. Second, it found that all claims for costs had to be submitted within six months after Robison received the instructions about the forms. OAR 411-70-459(5) (1992). Robison's November 10, 1992, letter fell outside that period and, thus, would not be considered. SDSD therefore refused to consider whether Robison was entitled to an OBRA '87 reimbursement on those costs. It also affirmed the denial of costs for the in-service director, the chart holders and the activity software because, after considering the record at the contested-case hearing, it found nothing that required it to reject the informal hearing committee's recommendations.[7]

Robison challenges SDSD's final order. It argues that SDSD's interpretation of its rules conflicts with their express terms and with the relevant provisions of OBRA '87.[8] We review SDSD's order to determine whether it "erroneously interpreted a provision of law." ORS 183.482(8)(a). As the Supreme Court has stated, when an

"agency's plausible interpretation of its own rule cannot be shown either to be inconsistent with the wording of the rule itself, or with the rule's context, or with any other source of law, there is no basis on which this court can assert that the rule has been interpreted 'erroneously.' "

*Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994). We conclude that SDSD's interpretation of its rules is valid under that standard.

---

[7] The final order did not explicitly rule on items within the comparison period that were not claimed in Robison's original submission to SDSD.

[8] Petitioner does not challenge SDSD's authority to promulgate the rules, the procedures followed when making the rules or the validity of the rules under Oregon law. Thus, we do not address those issues.

■ Robison argues that SDSD's interpretation conflicts with the language of the add-on rules in several ways. First, it questions SDSD's interpretation of the conditions under which a facility's payment rate will be adjusted. OAR 411-70-458(2) (1992) states:

"The payment rate necessitated by compliance with OBRA will be adjusted when significant new actions are required to be implemented."

Robison would have us interpret that provision to require the agency to calculate an add-on rate for a facility that includes costs for all services and items required by OBRA '87, whether the costs of the services or items were incurred before or after the enactment of OBRA '87.

In contrast, SDSD has interpreted that provision to limit the add-on adjustment to "significant new actions" that the facility had to take *after* OBRA '87 was enacted in order to comply with it. Therefore, in order to receive reimbursement for a claimed cost, Robison had (1) to show that there was an increase in costs to the facility because OBRA '87 required it to take new actions and (2) to support that assertion with accounting evidence. Considering the language of the rule, we hold that SDSD's reading of it is plausible. Thus, we do not agree with Robison that SDSD's interpretation of the conditions under which the payment rate must be adjusted conflicts with the rule's language. *See Don't Waste Oregon Com.*, 320 Or at 142.

■ Second, Robison challenges SDSD's conclusion that the add-on rules barred a facility from claiming any new cost items in the informal and contested-case hearings. Robison argues that there is nothing in the Oregon APA or the add-on rules that limits the scope of those hearings in that way.

SDSD interpreted the add-on rules to provide two methods by which a facility could claim an OBRA '87 cost: (1) by using the forms provided by SDSD for costs incurred during one of the comparison periods and (2) by making a written request for reimbursement for costs incurred outside of the comparison period. SDSD stated in its final order that a written request could relate only to costs outside the comparison period and had to be submitted within the six-month

period dictated by the rule.[9] OAR 411-70-459(5) (1992). Further, regardless of the method selected, SDSD interpreted the rule to require the facility to submit the claim to SDSD before raising it in the informal dispute process. The informal process is understood to be the first level of appeal. The contested case has been interpreted by SDSD as a review of the decision as it proceeded through the informal hearing.

Robison argues that that interpretation is inequitable. It offered evidence that, based on the discussions leading up to the rules, it understood that it would be able to submit information at the informal hearing for costs that it had not claimed before. However, when the language of the rules is examined, Robison's interpretation is untenable. No matter what the discussions that led to the rules implied, the rules make evident, in several sections, that the informal hearing was established as an opportunity for a facility to appeal a denial of claimed items. OAR 411-70-459(13)(a), (b), (f) (1992).[10] Robison did not challenge the validity of the rule as

---

[9] OAR 411-70-459(5) (1992) stated:

"The Division will suspend the current add-on for those facilities which fail to respond within 90 days of receipt of the Division's request for information. The Division will initiate this action on the first of the month following this 90-day period. The suspension will last until the facility submits *OBRA related cost information which must be received no later than six months after receipt of the instructions.*"

(Emphasis supplied.) SDSD interpreted that provision to require that all OBRA-related cost information to be considered by the division be submitted within six months of Robison's receipt of the instructions, that is, by September 20, 1992.

[10] OAR 411-70-459(13) (1992) outlines the informal dispute process and states in relevant part:

"(13) *Informal Dispute Resolution Systems.* OBRA '8 cost disputes will be resolved using an informal dispute resolution process prior to an administrative review and contested case hearing process (OAR 411-70-435).

"(a) Facilities which are reviewed and/or audited, may request an informal hearing when the Division denies all or part of the items the facility requested as an OBRA add-on cost. The facility may provide additional information on OBRA cost items proposed but not approved by the Division as part of its review.

"(b) A facility with a claim for OBRA costs before or after its OBRA comparison period (May 1990 - May 1991 or September 1990 - September 1991) must first submit a written request and supporting data to the Division, including comparable pre- and post-OBRA data, where appropriate. If the facility does not accept the Division's decision, it may initiate a request to the Informal Hearing Committee. This provision expires for claims initiated after September 30, 1992.

"* * * * *

written or the procedures used to promulgate it, so we decline its invitation to consider the discussions that led to the rule to counter the plain language of it.

SDSD's interpretation has limited the contested-case review to claims properly appealed to the informal hearing. Robison accurately points out that there is nothing explicit in the APA that limits the scope of the contested-case hearing. It also argues that there is nothing in the add-on rule that limits the scope. We agree that the add-on rules do not explicitly contradict Robison's interpretation of them. However, we are not interpreting those rules on a clean slate, but, as noted above, we are examining SDSD's interpretation of its rules to determine if its interpretation is plausible. *See Don't Waste Oregon Com.*, 320 Or at 142.

We hold that SDSD's limitation on the review process is a permissible interpretation of its add-on rules. Under SDSD's interpretation, the rules set out an efficient system to determine the add-on rate: (1) a facility submits all items it wants to claim for an OBRA '87 add-on reimbursement; (2) SDSD determines an add-on rate; (3) if unhappy with that rate, the facility can appeal the ruling to the informal hearing committee, submitting any other information that may demonstrate why the cost should not have been denied; (4) SDSD then reestablishes the add-on rate; (5) if unhappy with that rate, the facility can appeal that rate through a contested-case hearing. The efficiency of that system would be undermined if the facility were permitted to introduce new claims at the final administrative level. Steps 1-4 would be meaningless. Robison does not present any statutory language that prohibits SDSD's interpretation of its rules, and, viewing SDSD's interpretation in the context of the entire add-on scheme, we conclude that it is plausible.

"(f) The Informal Hearing Committee will consider additional information supporting a previously listed OBRA cost as well as the documentation initially furnished to the Division auditors for their field reviews or desk audits.

"* * * * *

"(j) * * * After the informal process, a facility may still request an administrative review or contested case hearing if it is requested within 30 days of receipt of the report from the informal hearing."

In the alternative, Robison argues that SDSD's interpretation conflicts with OBRA '87 and with subsequent amendments to it. We are not persuaded. Federal law gives a great deal of deference to the state administrative agency responsible for administering the Medicaid program. *See Volk v. Dept. of Human Resources*, 104 Or App 27, 30-31, 799 P2d 658 (1990) (discussing how 1980 Congressional amendment (the Boren amendment) expanded deference given to state agencies in administering Medicaid). Under federal law, a state must pay reimbursement rates to facilities that provide care to Medicaid recipients that

> "the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal law, regulations, and quality and safety standards[.]"

42 USC § 1396a(a)(13)(A); Omnibus Budget Reconciliation Act of 1980, Pub L No 96-499, § 962(a), 94 Stat 2599, 2650 (1980) (the Boren amendment).

In 1987, when Congress required new actions and services not previously required of facilities receiving Medicaid funds, participating states, such as Oregon, were required to "take into account" the costs incurred by facilities to comply with the new requirements. 42 USC § 1396a-(a)(13)(A). In 1990, Congress amended 42 USC § 1396a-(a)(13)(A) to clarify that when a state takes into account the costs of complying with the Medicaid program, it should also take into account "the costs of services required to attain or maintain the highest practicable physical, mental, and psychological well-being of each resident eligible for benefits." Pub L No 101-508, § 4801(e)(1)(A), 104 Stat 1388 (1990).

Based on those provisions of federal law, Robison argues that its interpretation of the SDSD add-on rules is the only one that is consistent with federal law. We disagree. Federal law requires only that the state agency "take into account" the costs of complying with the system and that it make an "appropriate adjustment in payment amounts" to account for the new requirements. SDSD's interpretation of the rule complies with those requirements.

Before OBRA '87 was implemented in 1990, SDSD had determined that providers whose costs were in the 70th percentile of industry costs for nursing facilities were "efficiently and economically operated facilities." *Former* OAR 411-70-440. Thus, SDSD did not, and does not, reimburse for Medicaid costs on a dollar-for-dollar basis. Robison does not challenge the validity of that system. When identifying the facility costs that equaled the 70th percentile of industry costs, SDSD considered the allowable costs that facilities incurred in running their facilities. Thus, allowable costs for any programs in place when SDSD made its calculation raised the cost level to the 70th percentile and were taken into account by the agency.

After the enactment of OBRA '87, SDSD promulgated the add-on rules to adjust reimbursement rates to take into account the cost of complying with the OBRA '87 requirements. SDSD interpreted the add-on rules to adjust rates only to the extent that a facility incurred a new cost to come into compliance with OBRA '87 that was not accounted for in calculating the original reimbursement rate. Applying that rule to Robison, Robison could recover only for costs that it could show were new costs. As the final order held, that "puts Robison in the same situation as all other facilities; it is reimbursed its direct care costs up to the ceiling, plus any new costs incurred to comply with the OBRA requirements." Therefore, we conclude that SDSD's rules, as it interpreted them, comply with federal law.

Applying SDSD's interpretation of its rules, we turn to the Robison claims that SDSD denied. Those claims can be divided into three categories: claims raised in the forms submitted for the May 1990 to May 1991 comparison period; claims raised either in the informal or contested-case proceedings; and claims raised in the November 10, 1992, letter. We affirm the denial of all of the claims.

First, we conclude that substantial evidence supports the denial of the cost of the in-service director and the activity software.[11] Further, we conclude that new claims

---

[11] Robison did not appeal the denial of the cost of the chart holders.

raised for the first time at either the informal or the contested-case hearing are procedurally barred by the rules. Finally, we affirm SDSD's decision not to consider the claims raised in Robison's November 10, 1992, letter to SDSD. The record indicates that the letter was written in response to a request for information for use in the informal hearing. Viewed in that light, claims raised in that letter are procedurally barred because they were never brought to and denied by SDSD originally. In its final order, SDSD also considered whether the letter could be considered a separate submission for costs incurred outside the comparison period. Substantial evidence supports SDSD's conclusion that the costs listed were not identified as having been incurred outside the comparison period and that the letter was written over six months after the instructions were sent to Robison. Therefore, Robison did not comply with the procedural requirements of the add-on rules for filing a claim for costs outside the comparison period and those costs are barred from consideration. Thus, we affirm the denial of all of Robison's claims.

Robison's other assignments of error are not well taken.

Affirmed.