Submitted September 4, 2009, affirmed April 28, 2010

## Derrick E. SMITH,
### *Petitioner,*

*v.*

## PUBLIC EMPLOYEES RETIREMENT BOARD,
### *Respondent.*

### Public Employees Retirement Board
### 071057; A139725

230 P3d 88

Derrick E. Smith filed the briefs *pro se*.

John R. Kroger, Attorney General, Erika L. Hadlock, Acting Solicitor General, and Jamie K. Contreras, Assistant Attorney General, filed the brief for respondent.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.*

SERCOMBE, J.

---

**SERCOMBE, J.**

Petitioner seeks review of a final order by the Public Employees Retirement Board (board) that granted summary determination in favor of the Public Employees Retirement System (PERS) and denied petitioner's request that PERS redeposit into his Tier Two variable account funds he had previously withdrawn from that account and was seeking to repay. The board's final order, which affirmed and adopted the proposed order issued by the administrative law judge (ALJ), concluded (1) that petitioner was not entitled to have the funds withdrawn from his Tier Two variable account restored into that account and that PERS properly redeposited all of petitioner's repaid funds into his regular account and (2) that the doctrine of equitable estoppel did not apply to require that PERS redeposit a portion of petitioner's repaid funds into his variable account. Petitioner assigns error to those conclusions. We review for errors of law, ORS 183.482(8)(a), and affirm.

The facts in this case, as found by the ALJ and adopted by the board, are undisputed by the parties. Petitioner was a Tier Two PERS member who participated in PERS's variable account program. In March 2003, he terminated his employment with his PERS-participating employer. In early August 2004, he requested to withdraw all funds from his PERS member account. On August 20, 2004, PERS withdrew the amounts credited to petitioner's regular and variable accounts and refunded them pursuant to ORS 238.265.[1]

---

[1] Provisions of the statutes governing PERS, ORS chapter 238, have been amended in various ways since the relevant time period involved in this case. Those amendments do not affect the substance of the statutory provisions that are material to the issues presented here. For ease of reference, we therefore refer to the current provisions of ORS chapter 238 throughout this opinion.

ORS 238.265 provides, in part:

"(1) Except as otherwise provided in this section, a member of the Public Employees Retirement System may withdraw from the Public Employees Retirement Fund the amount credited to the member account, if any, for the member if:

"(a) The member is separated from all service with participating public employers;

"(b) The member is separated from all service with employers who are treated as part of a participating public employer's controlled group under the

On August 31, 2004, petitioner returned to PERS-qualifying employment. Within a year of the withdrawal of funds from his PERS account, petitioner sought to redeposit those funds into PERS. In June 2005, PERS sent petitioner a letter regarding its estimate of his voluntary redeposit. In July 2005, pursuant to ORS 238.105,[2] petitioner repaid the full amount withdrawn from his PERS account in 2004 plus accrued interest, as had been indicated in PERS's June 2005 letter. In July 2006, PERS recalculated petitioner's redeposit amount and invoiced him for the unpaid balance. In February 2007, petitioner requested that PERS redeposit a portion of his restored funds into the variable account. PERS denied that request and explained, "It is customary PERS practice to transfer the variable account to the regular account immediately prior to a withdrawal. Therefore, when you redeposited your funds, we restored your entire balance as a regular member account balance."

Petitioner requested a hearing to challenge the denial of his request. Following that hearing, the ALJ issued a proposed order that reached the conclusions noted above, which the board later adopted. The ALJ opined that, at the time of petitioner's voluntary redeposit under ORS 238.105, contributions and transfers to a member's variable account were prohibited by ORS 238.260(3)(b) and (5)(d).[3] In addition,

---

federal laws and rules governing the status of the system and the fund as a qualified governmental retirement plan and trust;

"(c) The member has not attained earliest service retirement age; and

"(d) The separation from service is not by reason of death or disability.

"* * * * *

"(5) Withdrawal of a member account under this section cancels all membership rights in the system, including the right to claim credit for any employment before withdrawal."

Under ORS 238.005(13)(a), " '[m]ember account' means the regular account and the variable account."

[2] ORS 238.105 provides, in part:

"(1) Whenever, within five years after the employee is separated from all service entitling the employee to membership in the system, an employee who has withdrawn the amount credited to the member account of the member reenters the service of an employer participating in the system, the employee's rights in the system that were forfeited by the withdrawal shall be restored upon repaying to the board within one year after reentering the service of the employer, the full amount so withdrawn together with the interest that would have been accumulated on the sum had the amount not been withdrawn."

[3] ORS 238.260(3)(b) provides that, "[n]otwithstanding any other provision of this section, a member may not contribute to the Variable Annuity Account after

the ALJ reasoned that OAR 459-007-0025 directed that petitioner's voluntarily redeposited funds be added to his regular account.[4] Moreover, the ALJ determined that, because the arrangement that petitioner sought was contrary to law, the doctrine of equitable estoppel could not operate in his favor.

On appeal, we understand petitioner to argue as follows: (1) although OAR 459-007-0025 "allows PERS the discretion" to decide what action is necessary regarding a member's lump sum payments, including voluntary redeposits, OAR 459-007-0220 "conversely" allows members the opportunity to credit earnings to their variable accounts; (2) ORS 238.105 makes petitioner eligible for restoration of his variable account, and, although ORS 238.260(3)(b) and (5)(d) prohibit future contributions and transfers to the variable account, those provisions do not prohibit restoration of petitioner's variable account; (3) in "canceling" petitioner's variable account, PERS ignores the policy of ORS 238.260, which provides that, once a member places money in the variable account, it cannot be transferred back to the regular account except at retirement and in other particular narrow circumstances; and (4) the doctrine of equitable estoppel requires restoration of petitioner's variable account. We write only to address petitioner's first two arguments and reject without discussion his remaining contentions.

■■ We begin with petitioner's argument that OAR 459-007-0025 imposes a discretionary standard on PERS and that the rule is "converse" to OAR 459-007-0220. We understand petitioner's argument to oppose the board's interpretation and application of the rule in denying his request to redeposit funds into his variable account. In *Jordan v. Employment Dept.*, 195 Or App 404, 408, 97 P3d 1273 (2004)

---

December 31, 2003." ORS 238.260(5)(d) provides that, "[n]otwithstanding paragraphs (a) to (c) of this subsection, a member may not elect to transfer funds under this subsection [from the member's regular account to the member's variable account] after December 31, 2003."

[4] At the time of petitioner's redeposit in 2005, OAR 459-007-0025(1)(b) (Nov 14, 2003) provided that "[m]ember lump sum payments include * * * [v]oluntary redeposit, as provided under ORS 238.105." Further, OAR 459-007-0025(5) (Nov 14, 2003) provided:

"If the effective retirement date does not occur in the same year as the date of payment, the member lump sum payment shall be made a part of the member's regular account as of January 1 of the year following the date of payment."

(quoting *Trebesch v. Employment Div.*, 300 Or 264, 273, 710 P2d 136 (1985)), we recognized that authorized representatives of an agency " 'interpret the law in the process of applying it.' " However, we ultimately concluded in *Jordan* that

> "any interpretation of departmental rules resulting in a conclusion [opposite of that made by the reviewing board] would be implausible, would conflict with the rule's text, and would, therefore, deserve no deference. [*Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994).] Put another way, resolving this case requires no rule interpretation because, on the facts of this case, the rule is perfectly clear; deciding the case requires only straightforward application of the law to facts * * *."

*Id.* at 410. Thus, where there is only one plausible way to interpret an agency's rule so as not to conflict with its own text, there is no interpretation by the agency, but merely a straightforward application.

At the time of petitioner's voluntary redeposit, as well as at the time of his earlier withdrawal, OAR 459-007-0025 (Nov 14, 2003) was straightforward as to its terms and definitions; subsection (5) of that rule directed that PERS "shall" credit member lump sum payments to a member's regular account. The use of the word "shall" indicated that a mandatory, not a discretionary, action was required of the agency. In addition, OAR 459-007-0025(1)(b)(B) defined "[m]ember lump sum payments" to explicitly include "[v]oluntary redeposit, as provided under ORS 238.105." Further, contrary to petitioner's arguments, OAR 459-007-0220 (Jan 7, 2000) did not address how PERS was required to handle voluntary redeposits, but rather addressed how earnings or losses were to be applied to a Tier Two member's regular and variable accounts when that member *withdrew* his or her member account under ORS 238.265.[5] For that reason, OAR 459-007-0220 was not "converse" to OAR 459-007-0025.

---

[5] OAR 459-007-0220 (Jan 7, 2000) provided, in part:

"For *withdrawal* of contributions of a terminated Tier Two member, not eligible for a retirement allowance, during a period for which no annual distribution of earnings or losses has been made, earnings or losses shall be applied to the Tier Two member's account to date of distribution as follows[.]"

(Emphasis added.)

Given the clarity and specificity of OAR 459-007-0025 (Nov 14, 2003), resolving this case required only that the board apply the rule to the facts in a straightforward manner, without the need to interpret the rule—*i.e.*, without the need to choose between at least two plausible meanings. And, on these facts, we conclude that the board correctly applied the rule in determining that PERS was required to add all of petitioner's voluntary redeposit to petitioner's regular account.[6]

■ Turning to petitioner's argument under the governing statutory scheme, we conclude that ORS 238.105 also fails to dictate the result sought by petitioner. When interpreting a statute, our goal is to ascertain the intent of the enacting legislature by examination of the statute's text and context, along with any relevant legislative history, and if necessary, by resort to relevant cannons of statutory construction. *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We give words of common usage that are not defined in the statute their plain and ordinary meanings. *Id.* at 611.

ORS 238.105(1) provides that a member's repayment of funds previously withdrawn, plus interest, restores "the employee's rights in the system that were forfeited by the withdrawal[.]" Petitioner equates restoration of an "employee's rights in the system" with restoration of an "employee's accounts." We are not persuaded that the phrase "employee's rights in the system" is so limited in interpretation. The statutory text and context indicate that the contours of an employee's restored "rights," under ORS 238.105(1), are shaped by the statutory and regulatory schemes governing PERS. At the time of petitioner's withdrawal in August 2004, petitioner's rights in the system were therefore defined, in part, by the then governing regulatory scheme, which included the provisions of OAR 459-007-0025

---

[6] We note that petitioner has not challenged the validity of OAR 459-007-0025. Thus, we do not address that issue. *See Robison Jewish Home v. SDSD*, 145 Or App 446, 452 n 8, 930 P2d 862 (1996), *rev den*, 325 Or 368 (1997) (noting that, where the petitioner did not challenge the agency's authority to promulgate the governing rules, the procedures followed when making the rules, or the validity of the rules under Oregon law, the court did not address those issues).

(Nov 14, 2003). As already discussed, OAR 459-007-0025 required that a member's voluntary redeposit be added to that member's regular account. Thus, at the time of petitioner's withdrawal, petitioner was not entitled to have PERS credit to his variable account any future redeposit.[7]

For all the above reasons, we conclude that the board did not err in granting PERS summary determination and denying petitioner's request that PERS redeposit into his Tier Two variable account funds that he had previously withdrawn from that account and was seeking to repay.

Affirmed.

---

[7] Petitioner also relies on *Strunk v. PERB*, 338 Or 145, 211-12, 108 P3d 1058 (2005), and argues that, as a vested member in the Variable Annuity Program, he is allowed to maintain—and thus restore—his variable account. In *Strunk*, the court held that, although the wording of ORS 238.260(3) (2001), *amended by* Or Laws 2003, chapter 67, section 3, "does not support a continued right to contribute to the variable annuity account program, the wording does evince a legislative promise to reserve until the time of retirement any monies that a member has invested in the variable annuity account program for the purchase of a variable annuity." *Id.* at 212. The court then went on to ultimately conclude that the 2003 legislative changes, which were codified in ORS 238.260(3)(b) and (5)(d) and which discontinued permitting PERS members to contribute to their variable accounts, were not inconsistent with the legislative promise to reserve until the time of retirement any funds placed into the variable accounts. *Id.* at 213. The court in *Strunk* was not confronted with the circumstances at issue here—*i.e.*, whether after withdrawing from the system, a member is entitled to redeposit funds to the variable account, despite the prohibition on contributions and transfers to the variable account embodied in ORS 238.260(3)(b) and (5)(d). We therefore do not find the analysis of *Strunk* to be controlling of the issues in this case and do not address petitioner's argument further.