Argued and submitted September 8, 2006, affirmed September 26, 2007

Leslie ROSE,
*Appellant,*

*v.*

BOARD OF TRUSTEES
FOR THE PORTLAND FIRE & POLICE
DISABILITY AND RETIREMENT FUND
FOR THE CITY OF PORTLAND, OREGON,
consisting of Vera Katz,
Tom Chamberlain, Leo Painton,
David Thurman, Mark Kroeker,
Ed Wilson, Ginny Burdick,
Charles Rosenthal, Tom Whelan,
Casey Honl, and Lonn Sweeney,
*Respondent.*

0403-02472; A128370

168 P3d 1204

Michael C. Petersen argued the cause for appellant. With him on the briefs was Heltzel, Upjohn, Williams, Yandell, Roth, Smith & Petersen, P.C.

Gregory H. Macpherson argued the cause for respondent. With him on the brief were Brad S. Daniels and Stoel Rives LLP.

Before Landau, Presiding Judge, and Schuman* and Ortega, Judges.

LANDAU, P. J.

---

* Schuman, J., *vice* Ceniceros, S. J.

**LANDAU, P. J.**

This is a dispute about whether petitioner is entitled to "surviving spouse" benefits after the death of a disability and retirement fund member from whom she was divorced two years earlier. The trial court held that she is not entitled to the benefits, because the fund specifically defines a "surviving spouse" as one to whom a member was married for at least 12 months before the member's death. Petitioner appeals, arguing that the issue is controlled by a domestic relations order (DRO) entered several weeks before the decedent's death stipulating that she is to be considered the surviving spouse notwithstanding the earlier divorce. Respondent—the board of trustees of the disability and retirement fund—argues that petitioner and her former husband could not simply stipulate away the plain terms of the fund. We agree with respondent and affirm.

The relevant facts are not in dispute. James Woodward worked for the City of Portland as a firefighter beginning in 1977. He married petitioner in 1988. They had one child, born in 1994.

As a city firefighter, Woodward was entitled to disability and retirement benefits under the terms of the Portland Fire and Police Disability and Retirement Fund (the fund), the provisions of which were adopted as Chapter 5 of the Charter of the City of Portland. Section 5-308 of the fund provides for death benefits for service-connected death of a member or for occupational death before retirement. The fund provides that two types of persons are eligible for those benefits: a "surviving spouse" and a "dependent minor child." Section 5-301(c) of the fund defines a "surviving spouse" for the purposes of determining eligibility for the death benefit:

> "Death benefits shall be paid to the Surviving Spouse of a deceased Member in accordance with this Chapter. The Surviving Spouse is a person to whom the Member was legally married throughout the 12-month period preceding death and from whom the Member was not judicially separated or divorced by interlocutory or final court decree at the time of death."

In 1998, petitioner and Woodward separated. A dissolution judgment was entered in 2000. The dissolution judgment provided that, among other things, a DRO would be entered that would apportion some of Woodward's retirement benefits under the fund. For reasons that are not reflected in the record, petitioner and Woodward did not enter into a stipulated DRO for the next two years.

In the meantime, Woodward became ill with pancreatic cancer. On January 8, 2002, petitioner and Woodward entered into a stipulated DRO. The DRO designated petitioner an "Alternate Payee" for purposes of eligibility for benefits under the fund and contained the following provision pertaining to death benefits under that fund:

> "If Member dies before retirement without remarrying and surviving for one year after such remarriage, Alternate Payee shall be considered the Surviving Spouse of Member for purposes of Sections 5-308 and 5-309 of the Plan, and Alternate Payee shall be entitled to receive all of the survivor benefits provided in those sections as if Member had a Surviving Spouse."

The dissolution court entered the DRO.

Seven weeks later, Woodward died. He was 47 years of age and had not reached his earliest retirement age. He was not married at the time.

Petitioner requested death benefits on behalf of herself and her minor child under section 5-308 of the fund. The Board of Trustees (the board) denied petitioner's application for death benefits for her, but it allowed the application for death benefits for the dependent minor child. The board concluded that, because petitioner was not a "surviving spouse" within the meaning of section 5-308 of the fund, she was not entitled to the benefits. And, because no other person qualified as Woodward's surviving spouse, the dependent minor child alone is entitled to benefits.

Petitioner then filed a petition for a writ of review in the Multnomah County Circuit Court, challenging the board's denial of her application for death benefits under section 5-308 of the fund.[1] She argued that the board had erred

---

[1] Under section 5-308 of the fund, a dependent minor child continues to receive death benefits only until age 18, while a surviving spouse continues to receive them for the balance of his or her life.

in failing to give effect to the DRO, which declared that she is to be regarded as the "surviving spouse" for purposes of entitlement to benefits under that section. The board, as respondent, argued that a DRO cannot alter the terms of a public disability and retirement fund.

Petitioner replied that, under the terms of ORS 237.600(1) (2001), the DRO can, in fact, alter the terms of the fund. That statute provides, in part:

> "Notwithstanding any other provision of law, payment of any * * * death benefit * * * under any public employer retirement plan * * * that would otherwise be made to a person entitled to benefits under the plan shall be paid, in whole or in part, to an alternate payee if and to the extent expressly provided for in the terms of any court decree of annulment or dissolution of marriage or of separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of annulment or dissolution of marriage or of separation. Notwithstanding any other provisions of this section, the total value of benefits payable to a member and to an alternate payee under this section may not be greater than the value of the benefits the member would otherwise be eligible to receive."

Petitioner noted that the statute authorizes a court in a dissolution proceeding to order a benefit that would "otherwise be made to a person entitled to benefits under the plan" be paid to an "alternate payee." According to petitioner, she is the person who otherwise—that is, if not for the divorce two years earlier—would have been entitled to the benefits, and the DRO specifically identified her as an "alternate payee."

Respondent rejoined that petitioner's reliance on ORS 237.600(1) cannot be reconciled with the wording of the statute in at least two respects. First, respondent observed, under petitioner's reading of the statute, she is both the person "otherwise entitled to benefits under the plan" and, at the same time, the "alternate payee." That, respondent suggested, makes no sense. Second, respondent argued, even if that were not the case, petitioner's reading of the plan would be flatly contradicted by the balance of the statute, which provides that in no event may the designation of an alternate payee increase the amount of benefits that the fund is

required to pay. In this case, respondent noted, the designation of her as an alternate payee requires the fund to pay benefits to her that it would not otherwise be obligated to pay.

The trial court agreed with respondent. The court explained that

> "the text of * * * ORS 237.600, afforded its plain and ordinary meaning, [is] clear. The statute was intended to facilitate a process by which a myriad of benefits that would, in the normal operation of a benefits plan, be made to an individual, *i.e.*, a payee, to instead be paid to another individual, *i.e.*, an alternate payee. Petitioner's textual interpretation is strained at best, in that nothing in the language of the statute evidences legislative intent to alter the Fund in a manner that would obligate payment of death benefits to a 'surviving spouse' where no such obligation would otherwise exist."

The court entered a general judgment affirming the board's decision to deny petitioner's application for death benefits under section 5-308 of the fund.

On appeal, petitioner essentially renews her argument that she should be considered a "surviving spouse." She does not contest that she is not a "surviving spouse" within the meaning of section 5-308 of the fund. She contends that the DRO has the effect of making her the surviving spouse by virtue of ORS 237.600(1), which provides that a dissolution court can order benefits that otherwise would be paid to a person entitled to receive them under the fund to be paid to an "alternate payee." Respondent likewise essentially reprises its argument that we cannot give ORS 237.600(1) that effect without doing violence to the wording of the statute and the manifest intentions of the legislature that enacted it.

Thus framed, the parties' dispute poses a question of statutory construction, which we answer by application of familiar principles set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We attempt to ascertain the meaning of the statute most likely intended by the legislature by examining the text in context and, if necessary, legislative history and other aids to construction. *Id.*

In this case, textual analysis of the statute is dispositive. As the trial court correctly observed, petitioner's proposed reading of ORS 237.600(1) simply cannot be reconciled with its wording.

Pared to essentials, the statute provides that payment of death benefits under a public employer retirement plan "that would otherwise be made to a person entitled to benefits under the plan" must be paid to an "alternate payee" if a dissolution court so orders. In ordinary parlance, a "payee" is "the person to whom money is to be or has been paid." *Webster's Third New Int'l Dictionary* 1659 (unabridged ed 2002). An "alternate" is "a choice between two or among more than two objects or courses * * * one that takes the place of another : one that alternates with another * * * an extra person appointed to take the place of another." *Id.* at 63. Accordingly, an "alternate payee" is a substitute for the original payee—the person "otherwise" entitled to benefits under the plan. That wording makes clear that the subject of the statute is the transfer or assignment of an existing right to receive benefits. Thus, the statute refers to the fact that there first is a person who is entitled to benefits under the plan, that is, a payee. Then, if a dissolution court so orders, payment may be directed to a different person, an alternate payee.

Petitioner nevertheless argues that the dissolution court had authority under ORS 237.600(1) to designate her the "alternate payee" of death benefits following Woodward's death. She contends that each of the statute's requirements is satisfied. According to petitioner, there exists a person "otherwise" entitled to benefits under the plan—that person being herself. Petitioner reasons that "otherwise," as used in this context, means "in the absence of [the] divorce" two years earlier. And, she argues, the DRO plainly designated her the "alternate payee" of those benefits.

There are three problems, however, with that argument and with that proposed construction of the statute. First, to accept petitioner's argument would mean that the legislature intended that, in the case of death benefits at least, the person "otherwise" entitled to benefits (that is, the former spouse) and the "alternate payee" be one and the

same person. As the foregoing discussion makes clear, the plain meaning of the words of the statute refutes that construction. Moreover, if the former spouse is already entitled to benefits under the plan, there would be no point in authorizing a dissolution court to authorize benefits to be paid to the same person as an "alternate payee."

Second, nothing in the text of the statute suggests that the term "otherwise" refers to a prior dissolution of marriage, particularly one that occurred years before the member's death. To the contrary, the phrasing of the statute more naturally suggests that the term "otherwise" refers to the circumstance that would exist in the absence of the trial court's entry of an order designating the alternate payee.

Third, petitioner's proposed construction runs afoul of the provision of ORS 237.600(1) that requires that the order designating the alternate payee not increase the value of benefits beyond the level of benefits that the member otherwise would be eligible to receive. In this case, it is undisputed that, in the absence of the DRO and its designation of petitioner as an alternate payee, the fund would not be obligated to pay death benefits to petitioner because she does not qualify as a "surviving spouse" under the terms of the fund. But, at least as petitioner would have it, the DRO would have the effect of obligating the fund to pay petitioner benefits that, but for that DRO, would not exist. To read ORS 237.600(1) as giving the dissolution court authority to create benefits where there were none is directly contrary to the limitation expressed in the statute.

Affirmed.