Argued and submitted May 7, affirmed September 23, 2015

Karen HAMLIN,
*Petitioner,*

*v.*

PUBLIC EMPLOYEES RETIREMENT BOARD,
for the State of Oregon;
and Mark Hamlin, personal representative of
the Estate of Scott Hamlin,
*Respondents.*

Public Employees Retirement Board
121403; A155277

359 P3d 581

Michael C. Peterson argued the cause for petitioner. With him on the briefs was Heltzel Williams PC.

Jennifer A. Costa argued the cause for respondent Mark Hamlin. With her on the brief was Barnhisel Willis Barlow & Stephens, PC.

Judy C. Lucas, Assistant Attorney General, argued the cause for respondent Public Employees Retirement Board. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.

LAGESEN, J.

## LAGESEN, J.

Petitioner Karen Hamlin is a public employee with a retirement account in the Public Employees Retirement System (PERS). When petitioner and her ex-husband divorced, the dissolution court ordered petitioner's PERS account divided between petitioner and her husband. However, neither petitioner nor her ex-husband ever gave PERS the paperwork it required in order to divide the account, so PERS did not divide it until after the ex-husband's death, when his estate provided the paperwork. After dividing the account, PERS distributed the account's balance attributable to the ex-husband's share to his estate. The questions before us in this judicial-review proceeding are these: did the death of petitioner's ex-husband eliminate PERS's authority to divide petitioner's PERS account in the manner required by the dissolution judgment? And does the fact that PERS did not divide the account before petitioner's ex-husband's death mean that PERS lacked authority to distribute the account to the estate?[1] In the order on review, the Public Employees Retirement Board (PERB) answered those questions no. We agree with PERB and affirm.

This case arises under ORS 183.482 on petitioner's petition for judicial review of PERB's final order in a contested case. In the order, PERB upheld the "letter of determination" by PERS that divided petitioner's PERS retirement account in accordance with the dissolution judgment and distributed that account to the estate of her ex-husband. PERB resolved the matter on cross-motions for summary determination, without making factual findings. OAR 137-003-0580.[2] We review PERB's order for errors of law. ORS 183.482(8)(a); *Smith v. PERB*, 235 Or App 159, 161, 230 P3d

---

[1] Petitioner also argues that the dissolution judgment was not "administrable" within the meaning of OAR 459-045-0020(1), which requires that a dissolution judgment be capable of administration under the governing statutes. *See* OAR 459-045-0020(1); OAR 459-045-0001(1) (defining "administrable"). We reject without discussion petitioner's contention that the judgment was not "administrable" within the meaning of the rule.

[2] OAR 137-003-0580 is a model rule of procedure for contested cases that has been adopted by PERB. Paragraph (6) of the rule provides for summary determination of issues under essentially the same criteria applicable to motions for summary judgment under ORCP 47 C:

88 (2010) (reviewing PERB order for legal error when order resulted from grant of summary determination).

Under Oregon law, a retirement plan or pension "shall be considered as property" in the context of the division of marital property in a judgment of dissolution. ORS 107.105(1)(f)(A). Although, as a general rule, a PERS member's retirement account is not assignable,[3] there is an exception to that rule when a judgment of dissolution of marriage directs the assignment. In such a case, the PERS member's former spouse becomes an "alternate payee" to whom the portion of the member's PERS benefits directed by the judgment may be paid. ORS 238.465(1) provides, in part:

> "Notwithstanding ORS 238.445 or any other provision of law, payments under [ORS chapters 238 and 238A] of any * * * retirement allowance * * * that would otherwise be made to a person entitled thereto * * * shall be paid * * * to an alternate payee if and to the extent expressly provided for in the terms of any judgment of annulment or dissolution of marriage[.]"

The statute further contemplates that, when a dissolution judgment directs the division of a PERS account, PERS will create a separate account in the name of the alternate payee in the manner specified by PERB administrative rules. ORS

---

"The administrative law judge shall grant the motion for a summary determination if:

"(a) The pleadings, affidavits, supporting documents (including any interrogatories and admissions) and the record in the contested case show that there is no genuine issue as to any material fact that is relevant to resolution of the legal issue as to which a decision is sought; and

"(b) The agency or party filing the motion is entitled to a favorable ruling as a matter of law."

As is the case on a motion for summary judgment under ORCP 47, the adjudicator is not permitted to make factual findings at that stage of the proceedings. Rather, the issues that an agency is empowered to resolve on summary determination are purely legal: (1) whether the evidence presented gives rise to a dispute of material fact and (2) whether the moving party "is entitled to a favorable ruling as a matter of law." OAR 137-003-0580(6). Although the order on review contains a section labeled "Findings of Fact," we understand that section to be a recitation of the undisputed material facts, and do not understand the label to suggest that the board improperly resolved disputed factual issues on summary determination. In all events, no party suggests that that section indicates that the board erroneously engaged in fact-finding on summary determination.

[3] ORS 238.445(1) states: "[T]he right of a person to a pension, an annuity or a retirement allowance * * * shall be unassignable."

238.465(3)(a). Those administrative rules, in turn, require that, to establish a separate account for an alternate payee, PERS must have in its records a "stamped" certified copy of the judgment establishing the alternate payee. OAR 459-045-0020(1) ("A final order must be received by PERS and approved as administrable before an alternate payee award can be established."); OAR 459-045-0001(9) (A "final court order" is "a court order that has been signed by a judge and shows the stamp of the court clerk or trial court administrator indicating the order is a certified copy of the original record that is on file with the court.").

Under ORS 238.465(4), if an alternate payee predeceases the member before the alternate payee begins receiving benefits, then the alternate payee is treated as a member of PERS who died before retirement for the purpose of PERS death benefits. In turn, under ORS 238.390(2), when a PERS member dies before retiring without designating a beneficiary, PERS is required to pay "the amount of money, if any, credited at the time of death to the member account of the deceased member to the personal representative appointed for the estate of the deceased member."

Petitioner is a PERS-covered Tier One employee.[4] Petitioner and Scott Hamlin (Hamlin) were married from 1976 until they divorced on June 28, 2004. Petitioner and Hamlin dissolved their marriage by a stipulated judgment of dissolution, which divided the marital property and awarded Hamlin 50 percent of petitioner's PERS retirement account accrued to December 31, 2003. The judgment directed PERS to segregate Hamlin's portion of the account into a separate account in his name and to do so as soon as "administratively feasible."[5] The judgment required

---

[4] We draw our statement of facts from the statement in the board's order. Consistent with the fact that the case was resolved on cross-motions for summary determination, the pertinent facts are not disputed.

[5] The judgment provided, in relevant part:

"8. WIFE'S PERS ACCOUNT. Husband is hereby assigned fifty percent (50%) of Wife's Oregon Public Employees' Retirement System (PERS) account in the manner described herein. Wife shall receive the remainder of the account.

"8.1 The PERS administrator shall segregate fifty percent (50%) of the Account which accrued up to December 31, 2003, (plus subsequent interest

petitioner to cooperate with PERS "in taking any action necessary to carry out the provisions" of the judgment. The judgment's provisions relating to the division of petitioner's PERS account became effective upon entry of the judgment on July 1, 2004.

On July 8, 2004, petitioner's attorney mailed to PERS a signed copy of the judgment of dissolution, but that copy did not have the stamp of the circuit court clerk or administrator, as required by the applicable administrative rules. PERS requested a stamped copy from petitioner's attorney but did not receive one.

In October 2006, Hamlin inquired of PERS why he had not received any mail related to the PERS account, and a PERS representative told him that PERS did not yet have a certified copy of the judgment that had been stamped

and earnings on said amount) into a separate account in Husband's name as provided in ORS 238.465 and ORS 237.600.

"8.1.1 The creation of this separate account through a transfer of funds shall occur as soon as administratively feasible.

"* * * * *

"8.3 Husband shall have the right to:

"8.3.1 Elect to begin receiving benefit payments:

"8.3.1.1 At any time Wife would be eligible to receive retirement benefits had Wife separated from service; or

"8.3.1.2 The date Wife actually separates from service due to death, disability, retirement or termination from employment.

"8.3.2 Elect to receive payment in any form available under the terms of the Public Employees Retirement System as provided by Oregon law.

"8.3.3 Designate a beneficiary to receive the remainder of any benefits assigned to him hereunder which he has not received at the time of his death. Such remaining benefits shall be paid to his estate in the absence of such a designation. The PERS administrator shall provide Husband a beneficiary designation form that will outline who is to receive his death benefits.

"* * * * *

"8.4 Until such time as PERS segregates Husband's portion, Wife shall not withdraw her benefits from PERS without Husband's advance written consent unless PERS first certifies that such withdrawal will have no effect whatsoever on Husband's benefits, including entitlement to the money match.

"* * * * *

"8.6 Wife shall cooperate with Husband and the PERS administrator in taking any action necessary to carry out the provisions of this judgment."

"filed." In an attempt to comply, Hamlin then faxed to PERS a stamped "filed" copy of a supplemental judgment relating to another retirement account, but not the PERS account. Hamlin died on February 1, 2012. At the time of Hamlin's death, PERS did not yet have in its records a stamped certified copy of the judgment, and had not yet set up an "alternate payee" account for Hamlin.

Hamlin died without a will and without having designated a beneficiary for his PERS account. Hamlin's brother filed a small estate affidavit in Marion County Circuit Court to administer his estate. After the opening of Hamlin's estate, the estate sent PERS a stamped certified copy of the 2004 judgment of dissolution directing the creation of a separate PERS account for Hamlin. Upon receiving that copy of the 2004 judgment, PERS created a separate account for Hamlin as an alternate payee. Because Hamlin had not designated a beneficiary, PERS paid the benefits in the account to Hamlin's estate.

Petitioner disputed PERS's division of the account and its determination that Hamlin's account should be paid to Hamlin's estate. Petitioner requested a hearing before PERB, contending that PERS should pay Hamlin's PERS benefits to her. Before PERB, each of the parties (petitioner, PERS, and Hamlin's estate) sought a summary determination pursuant to OAR 137-003-0580, contending that the facts were undisputed and that each was entitled to prevail as a matter of law. In the alternative, petitioner contended that there was a genuine issue of material fact that precluded summary determination for the estate and PERB.[6] PERB granted the estate's and PERS's motion for summary determination and upheld the PERS determination, rejecting petitioner's arguments that PERS lacked the statutory authority to divide her account in accordance with the 2004 judgment. Petitioner timely filed this petition for judicial

---

[6] Petitioner contended that evidence that Hamlin intended for her to keep the PERS benefits that had been awarded to him in the dissolution judgment created a factual dispute as to whether PERS could pay Hamlin's account to Hamlin's estate. Evidence of Hamlin's post-dissolution intent, however, is not relevant to PERS's obligations under the dissolution judgment and its governing statutes and, therefore, did not operate to create a genuine issue of material fact as to the PERS's obligation to pay the Hamlin's account to the estate.

review. On review, she reiterates her various arguments as to why PERS lacked the authority to divide her PERS account and pay Hamlin's portion to his estate. For the reasons that follow, we reject all of those arguments.

Petitioner first argues that PERS lacked statutory authority to divide her account because the 2004 judgment did not state explicitly that PERS would pay the benefits due under the judgment to Hamlin's estate if Hamlin died before PERS set up the alternate payee account for Hamlin. Petitioner notes that ORS 238.465(1) states that an account may be divided between a PERS member and a former spouse only "to the extent expressly provided for" in a dissolution judgment. Petitioner contends that, because the judgment of dissolution did not expressly address how the account would be divided in the event of Hamlin's death before a separate account had been created, the judgment did not "expressly provide" for the division of the account in that circumstance, and PERS lacked authority to create an account for Hamlin after his death.

Contrary to petitioner's argument, nothing in ORS 238.465 suggests that the parties were required to state specifically in the 2004 judgment that PERS was to divide the account even if Hamlin died after the judgment but before PERS set up the account. And, as PERB concluded, the 2004 judgment, by its terms, "expressly provided" for the division of petitioner's PERS account that PERS ultimately implemented. The property division portion of the 2004 dissolution judgment by its terms became effective upon its entry on July 1, 2004. It provided, "[Hamlin] is hereby assigned fifty percent (50%) of Wife's Oregon Public Employees' Retirement System (PERS) account[.]" By virtue of the award, Hamlin was an alternate payee and a "member" of the PERS system. ORS 238.465(4). Also by virtue of the award, Hamlin owned a 50 percent share of petitioner's PERS account. No provision in the judgment made Hamlin's interest in the PERS account contingent on his survival or on PERS's creation of an account during his lifetime. Hamlin's interest in the retirement account as an alternate payee was fixed by the judgment. The judgment provided that, upon Hamlin's death, in the absence of a beneficiary designation, Hamlin's interest was to be "paid to his estate."

Under those circumstances, PERB was required to comply with the judgment's express direction to pay the account to Hamlin or to his estate.[7]

Petitioner next contends that even if PERS had the authority to set up the alternate payee account for Hamlin after his death, PERS lacked authority to pay that account to Hamlin's estate. Petitioner asserts that under the terms of the dissolution judgment, PERS could pay the account to Hamlin's estate only if PERS first complied with its obligation under the judgment and under the statutes to provide Hamlin—while Hamlin was alive—with an opportunity to designate a beneficiary. Petitioner reasons that, because PERS never provided Hamlin with an opportunity to designate a beneficiary, the judgment does not "expressly provide" for the distribution of benefits to Hamlin's estate, rendering that distribution contrary to ORS 238.465(1). We disagree with petitioner's reading of the judgment. Although the judgment contemplated that Hamlin would have the opportunity to designate a beneficiary, nothing in its terms *conditions* the payment of the account on PERS having first given Hamlin the opportunity to designate a beneficiary.

Alternatively, petitioner asserts that ORS 238.390(2) barred PERS from transferring any funds to Hamlin's estate. ORS 238.390(2) provides that if a member dies without designating a beneficiary, PERS shall pay to the member's estate "the amount of money, if any, *credited at the time of death* to the member account of the deceased member." (Emphasis added.) Petitioner contends that the term "credited" as used in ORS 238.390(2) has its common meaning, *see Webster's Third New Int'l Dictionary* 532 (unabridged ed 2002) ("credit" means "the balance in a person's favor in an account"), and that money is "credited" to a member's account when it is actually deposited to the account.

---

[7] Petitioner relies on *Rose v. Board of Trustees*, 215 Or App 138, 168 P3d 1204 (2007), in support of her argument that PERS lacked authority to implement the dissolution judgment. That case is inapposite. There, we held that PERS lacked authority to implement a dissolution judgment's award of benefits where doing so would "create benefits where there were none" under the statute. *Id.* at 145. Here, the dissolution judgment did not operate to "create benefits where there were none." It simply operated to divide petitioner's PERS account in the manner authorized by ORS 238.465(1).

Petitioner reasons that because the alternate payee account had not been created by the time of Hamlin's death, no benefits had been credited to the account, meaning that the amount that PERS was authorized to pay to the estate was zero. In other words, petitioner argues that ORS 238.390(2) should be interpreted to mean that the death of an alternate payee before the creation of an account results in an extinguishment of an award made by a dissolution judgment.

We reject the argument. The plain terms of that provision simply do not speak to the situation present here, where, for administrative reasons, PERS has not yet set up an account that, by virtue of a judgment (or other source of law), PERS is required to treat as having been created as of an earlier date.

In any event, even if the text of ORS 238.390(2) is susceptible to the interpretation that petitioner places on it, the context of the provision makes clear that the legislature did not intend that interpretation. Petitioner's interpretation would result in the forfeiture of benefits awarded to an alternate payee by a dissolution judgment when the alternate payee dies before the creation of an account. In fact, because ORS 238.390 applies to PERS members generally—not just to alternate payees—petitioner's interpretation would mean that if PERS omitted for whatever reason to set up an account that it otherwise was required to set up for a PERS-covered employee, and that employee died, the employee's death would result in the forfeiture of the employee's PERS account. There is not anything in ORS chapter 238 to suggest that the legislature had that intent. On the contrary, the legislature has described the circumstances that give rise to a forfeiture of benefits, and the death of a member or alternate payee before the creation of an account is not among them. *See* ORS 238.458 (describing circumstances under which benefits are forfeited).

Affirmed.