Argued and submitted May 11, 2016, affirmed June 21, 2017

PERSELS & ASSOCIATES, LLC,
*Petitioner,*

*v.*

DEPARTMENT OF
CONSUMER AND BUSINESS SERVICES,
Division of Finance and Corporate Securities,
*Respondent.*

Department of Consumer and Business Services
DM120049; A157430

398 P3d 428

Todd S. Baran argued the cause for petitioner. With him on the brief was Todd S. Baran, PC.

Patrick M. Ebbett, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

**LAGESEN, J.**

Petitioner Persels and Associates, LLC, (Persels) is a law firm and Maryland limited liability company. The primary services that Persels provides are debt settlement services. For a fee, Persels offers to collect money from a consumer and then, once it has collected enough money, negotiate with a consumer's creditors to reduce the consumer's unsecured debt to an amount that the consumer can pay using the collected funds. Persels offers these services to consumer debtors nationwide, including those located in Oregon. Although ORS 697.612 generally requires those who do what Persels does to register with the director of the Department of Consumer and Business Services (DCBS) before providing—or offering to provide—such services in Oregon, Persels did not register with the director before it began offering its services to Oregon consumers. Following a contested case, the director determined that Persels committed 1,801 violations of ORS 697.612 when, without having registered with the director, Persels held paid consultations with 1,801 Oregon consumers at which Persels offered—for a fee—to provide its services to those consumers. The director issued a final order directing Persels to cease and desist from ongoing violations of the Oregon laws governing debt management service providers and to pay an assessed $500,000 civil penalty.

Persels seeks judicial review of that order under ORS 183.482. On review, Persels asserts that the director erred in concluding that its conduct violated Oregon law. It contends that it had no obligation to register with the director because ORS 697.612(3)(b) exempts some attorneys from the registration requirement. Persels argues that it is entitled to the benefit of that exemption. Alternatively, Persels asserts that it committed at most a single violation of ORS 697.612, and that the director therefore erred in determining that it had committed 1,801 violations. For the reasons that follow, we disagree with Persels on both points. We therefore affirm.

## I.  STANDARD OF REVIEW

The director resolved the contested case on the parties' cross-motions for summary determination.[1] Under these circumstances, we review the director's order for errors of law. ORS 183.482(8)(a); *Hamlin v. PERB*, 273 Or App 796, 798-99, 359 P3d 581 (2015) (stating standard of review applicable to orders in contested cases arising from a grant of summary determination).

## II.  BACKGROUND

A.  *Regulatory Framework*

ORS 697.602 to 697.842 governs the provision of "debt management services" in Oregon. The legislature originally enacted those statutes in 1983, and then amended them in 2009. It did so to strengthen regulation of the debt management services industry in response to "new and troubling forms of debt management companies" using business models that the statutes, prior to amendment, did not reach. Testimony, House Consumer Protection Committee, HB 2191, Feb 9, 2009, Ex 4 (written statement of David Tatman, Administrator, Division of Finance and Corporate Securities, Department of Consumer and Business Services); *see generally* Or Laws 2009, ch 604; *see also* Matthew Brock, *As Cats are Drawn to Cream: Expanding Debt Settlement Regulation to Traditionally-Exempt Entities*, 47 Colum J L & Soc Probs 385, 404-11 (2014) (discussing the different business models employed by debt management companies to

---

[1] The director's order contains a section labeled "Findings of Fact." However, where an agency adjudicator resolves a contested case proceeding on a motion or motions for summary determination under OAR 137-003-0580, the agency does not engage in fact finding:

"As is the case on a motion for summary judgment under ORCP 47, the adjudicator is not permitted to make factual findings at that stage of the proceedings. Rather, the issues that an agency is empowered to resolve on summary determination are purely legal: (1) whether the evidence presented gives rise to a dispute of material fact and (2) whether the moving party 'is entitled to a favorable ruling as a matter of law.' OAR 137-003-0580."

*Hamlin v. PERB*, 273 Or App 796, 798 n 2, 359 P3d 581 (2015). Consistent with the procedural posture of the case, we understand the director's statement of the facts to be a statement of the undisputed facts, rather than a statement of factual findings. In any event, neither party suggests that the director erroneously engaged in fact finding in resolving the cross-motions for summary determination. *See id.* (taking the same approach in a similarly-situated agency case).

avoid regulation under existing state laws during the early part of the twenty-first century).[2] As the administrator of the DCBS Division of Finance and Corporate Securities who proposed the amendments explained, greater regulatory oversight was required because these new forms of debt management services were extracting significant fees from debt-ridden consumers and then providing little or no assistance of value to the consumer:

"In the past few years, we have seen the birth and growth of debt settlers or debt eliminators who use a business model not under our regulation. For example, debt elimination providers claim the ability to eliminate various types of debt for an upfront fee. They claim to be able to negotiate with creditors, usually credit card companies, but also other creditors, and eliminate principal and interest in return for a single lump sum payment that significantly lowers the balance owed. Most of us encountered the advertisements on radio, television or the Internet in which debt settlement companies mention incredible results for previous clients. Claims like 'debt reduced by 50%, 60% or even 75%' and 'debt settled in 12 to 30 months.'

"Additionally, these companies inappropriately advise a consumer to stop communicating with a creditor—which is generally to the detriment of the consumer. Debt elimination providers do not accept money from a consumer for redistribution to the consumer's creditors. Instead, debt settlement or debt eliminator companies have the debtor save money in the debtor's bank account, after first paying the debt settlement company a hefty upfront fee, until such time as the debt settlement company has negotiated a reduction in the amount to be paid to settle the debt and then instructs the debtor to pay the creditor.

"Unfortunately, the delay in contacting or negotiating the debt may take several to many months' time during which there has been no contact or payment to the creditor. In the meantime, creditors have filed suit to collect

---

[2] According to the order on review, one such business model is the "attorney model," under which a debt management company affiliates with attorneys and represent to consumers that attorneys would assist with the debt negotiation process when, in actuality, attorney involvement was minimal. *See* Brock, 47 Colum J L & Soc Probs at 404-08 (discussing the development of the attorney model as a means for debt management service providers to operate outside of the regulations generally applicable to the industry).

the debt, obtain a judgment and begin garnishing wages and bank accounts. We have talked to representatives of the Oregon Collectors Association, the organization that represents collection agencies in Oregon. They advise that many of their collectors do not believe debt settlement companies provide a meaningful resolution to the debt they are collecting and generally disregard proposals from these companies.

"The scenario I describe is in the best of circumstances, when a genuine, if expensive and ineffective, effort may be made on behalf of a debtor. In worst-case scenarios, we have heard of debtors who provide a significant upfront fee and then vainly wait to hear back from the debt settlement company with further instructions. The end result is that the debtors have lost additional money and precious time in finding the best approach to their debt problems."

Testimony, House Consumer Protection Committee, HB 2191, Feb 9, 2009, Ex 4 (written statement of David Tatman, Administrator, Division of Finance and Corporate Securities, Department of Consumer and Business Services).

As amended, the statutes (1) define the types of services and conduct that are regulated as "debt management services" and (2) impose numerous requirements on the provision of those services and the fees that may be charged for those services.

For purposes of the regulatory scheme, a person provides a debt management service by providing certain services for a fee and, in some instances, simply by offering to provide specified services for a fee. ORS 697.602(2) identifies the conduct that constitutes the provision of a debt management service. It states:

"'Debt management service' means an activity for which a person receives money or other valuable consideration or expects to receive money or other valuable consideration in return for:

"(a)   Receiving or offering to receive funds from a consumer for the purpose of distributing the funds among the consumer's creditors in full or partial payment of the consumer's debts, whether or not the person holds the consumer's funds;

"(b)   Improving or offering to improve or preserve a consumer's credit record, credit history or credit rating;

"(c)   Modifying or offering to modify terms and conditions of an existing loan from or obligation to a third party; or

"(d)   Obtaining or attempting to obtain as an intermediary on a consumer's behalf a concession from a creditor including, but not limited to, a reduction in the principal, interest, penalties or fees associated with a debt."

Thus, among other things, under the plain terms of the statute, a person provides a debt management service under Oregon law if the person receives a fee for "offering" to collect funds from a consumer to distribute to the consumer's creditors. ORS 697.602(2)(a).

In addition to defining the services and conduct that are regulated as "debt management services," the statutes regulate and restrict how those services may be provided. Providers must supply each potential customer with "an analysis of the consumer's budget * * * that evaluates whether the debt management services the debt management service provider proposes to perform are advantageous to the consumer" before entering into an agreement to provide services. ORS 697.652(2); ORS 697.662(4). An agreement to perform debt management services must be in writing and must satisfy a host of statutory requirements, including identifying the fees to be charged and an explanation of how those fees were determined. ORS 697.652. Debt management service providers must refrain from a range of prohibited practices, including charging more than the amount authorized by statute, and also must comply with a range of affirmative statutory requirements for the provision of services. ORS 697.662 (identifying prohibited practices by debt management service providers); ORS 697.672 (establishing record keeping requirements for debt management service providers); ORS 697.692 (establishing limits on the fees that may be charged for debt management services); ORS 697.707 (requiring debt management service providers to make certain disclosures to consumers). A debt management service provider's failure to comply with statutory requirements exposes the provider to civil damages,

injunctive relief, and civil penalties. *See generally* ORS 697.732 - 697.832.

To assist the director in monitoring the provision of debt management services in Oregon, the statute requires debt management service providers to register with the director unless the provider falls within one of 14 enumerated exceptions to the registration requirement. *See* ORS 697.612(3) (listing exceptions to registration requirement); ORS 697.632 (establishing registration procedure). One enumerated exception to the registration requirement—the one at the heart of this case—applies to lawyers. It states that the registration requirement does not apply to an "attorney licensed or authorized to practice law in this state, if the attorney provides a debt management service only incidentally in the practice of law." ORS 697.612(3)(b). Before the 2009 amendments, lawyers were categorically exempt from the operation of the statutes governing debt management service providers. *See former* ORS 697.622 (2007) ("The following are not required to comply with ORS 697.602 to ORS 697.842: (1) Attorneys-at-law rendering services in the performance of duties as attorneys."). The 2009 amendments narrowed the scope of the exemption for attorneys, bringing them under the regulatory scheme except when they provide debt management services "only incidentally in the practice of law." ORS 697.612(3)(b).

After the 2009 amendments, the director promulgated an administrative rule to clarify the scope of the registration exemption for attorneys. The rule defines what it means for an attorney to "provide[] a debt management service only incidentally in the practice of law" for purposes of ORS 697.612(3):

"(1)   An attorney provides debt management services only incidentally to the practice of law if:

"(a)   The attorney only provides the services to a client of the attorney and only while acting as an attorney on behalf of the client;

"(b)   The attorney does not act as a broker for debt management services;

"(c)   If the attorney refers a consumer who is a client of the attorney to a third party debt management services

provider, the attorney does not receive compensation, directly or indirectly, for the referral and in the attorney's professional judgment the attorney believes the referral will be beneficial to the client;

"(d)   The attorney does not provide debt management services to a third party on behalf of a consumer who is a client of the attorney; and

"(e)   Any advertisement used by the attorney concerning debt management services complies with the Oregon Rules of Professional Conduct and formal ethics opinions published by the Oregon State Bar applicable to advertising."

OAR 441-910-0005(1).

If a nonexempt debt management services provider does not register with the director, ORS 697.612(1) bars the provider from performing debt management services and other related activities. Specifically, the provider

"may not engage in business in this state in the course of which the person:

"(a)   Performs a debt management service; or

"(b)   Receives money or other valuable consideration or expects to receive money or valuable consideration for:

"(A)   Soliciting or receiving an application from a consumer for a debt management service;

"(B)   Forwarding or providing a completed application for a debt management service to a debt management service provider;

"(C)   Referring a consumer to another debt management service provider, if the person is a debt management service provider;

"(D)   Providing a consumer's name, address or other information that identifies the consumer to a debt management service provider for the purpose of arranging the provision of a debt management service; or

"(E)   Providing advice, assistance, instruction or instructional material concerning a debt management service to a consumer."

ORS 697.612(1). To enforce the registration requirement, ORS 697.832(1) authorizes the director to impose a civil penalty "in an amount not to exceed $5,000 for each violation of ORS 697.612."

B.  *Substantive Facts*

1.  *Persels' operations generally*

Persels is an LLC organized and headquartered in Maryland. It offers debt settlement services to consumers, that is, it offers, for a fee, to attempt to negotiate a reduction in debt with creditors. Persels registered as a business in Oregon in 2009, but did not register with the director before providing debt management services to Oregon consumers.

Persels provides its services through three different types of staff: staff attorneys employed at its Maryland headquarters, 150 field attorneys located across the country,[3] and staff at CareOne Debt Relief Services (CareOne). CareOne is a debt management service provider with which Persels has contracted to provide debt settlement services to Persels' clients on Persels' behalf. If Persels' clients require assistance that necessarily must come from a lawyer, Persels' staff attorneys and field attorneys perform those services. Otherwise, CareOne performs the bulk of the services provided to Persels' clients using paralegals and other nonlawyer staff. Among other things, CareOne collects and stores Persels' client data, mails letters on behalf of Persels to Persels' clients and their creditors, contacts creditors and negotiates with them on behalf of Persels, staffs a central call center for Persels, manages Persels' clients trust accounts, and prepares and manages almost all of the debt settlement plans for Persels' clients.

CareOne also is the source of Persels' clients. CareOne itself provides debt management services to consumers who can afford to pay off their debts in full under a debt management plan. If a consumer cannot afford to pay off their debt in full, CareOne then refers the consumer to Persels for debt settlement services. Upon receiving the referral, a staff attorney at Persels' Maryland headquarters

---

[3] The field attorneys include both employees and independent contractors.

reviews the documentation of a referred consumer, and then forwards the documentation to a field attorney located in the consumer's home state. The local field attorney then schedules an initial consultation with the consumer, for which the consumer is charged $100-$400, depending on the amount of the consumer's debt. At that consultation, the attorney provides a comprehensive analysis of the consumer's financial condition and an overview of the debt settlement services that Persels provides, and offers to provide those services to the consumer. If, however, Persels' financial analysis demonstrates that the consumer will not be able to afford to settle the consumer's debts, then the field attorney suggests bankruptcy as an alternative.

If a consumer decides to accept Persels' debt settlement services after the initial consultation with a field attorney, Persels requires the consumer to sign a retainer agreement. The retainer states that Persels has been retained to represent the client for the purpose of negotiating with creditors regarding unsecured debt, and to "assist in legal matters relating to that process." The retainer further states that Persels will answer legal questions related to the client's unsecured debt, and creditors' efforts to collect on that debt, but will not represent the client in collection suits. The agreement further provides that Persels will represent the client in damages actions against creditors for violations of the Fair Debt Collections Practices Act if the client requests, although Persels has never filed such an action on a client's behalf.

Once the retainer is signed, Persels sends letters to the consumer's creditors identifying itself as the consumer's representative for negotiating over the debt, and directing creditors to stop contacting the consumer. However, the letter also states that Persels will not accept service on behalf of the consumer, and also that Persels will not appear on behalf of the consumer in litigation. At the same time, Persels begins collecting money from the consumer on a monthly basis. The amount an individual consumer is required to pay is computed using an algorithm that determines the consumer's monthly disposable income. For the first 18 months of the relationship, almost all of the money collected goes toward Persels' fees. Persels does not perform

any negotiations with a consumer's creditors until after the consumer has accumulated sufficient funds to support an offer to compromise the debts.

When a consumer enters a retainer agreement with Persels, the consumer is provided with the phone number for the call center staffed by CareOne as the contact number for the firm. Persels discourages CareOne from providing clients with the phone number of the Persels attorney assigned to the client. Unless a service is one that must be provided by an attorney, CareOne's nonlawyer staff provides the service. When a client contacts the call center, a call center "triage" person determines whether the client needs to talk to an attorney. If needed, the call center staff refers the matter to a Persels staff attorney to assess whether the client needs to talk to a field attorney.

Once a client has amassed sufficient funds to make payments on settlement offers, the nonattorney staff at CareOne begins to negotiate settlements with creditors. Field attorneys can influence those negotiations if the attorney determines that a particular creditor should receive priority. Otherwise, CareOne staff decides when to contact a creditor and what to offer.

2. *Persels' Oregon operations*

Persels has two field attorneys in Oregon, Kiel and Corwin. Each of Persels' clients in Oregon is assigned to one of those two field attorneys. They perform Persels' initial consultations for those consumers referred by CareOne who live in Oregon. When needed, Corwin and Kiel provide advice to Persels' Oregon clients about litigation with creditors, and assist in drafting pleadings and other papers that those clients can use to represent themselves in litigation with creditors, but Corwin and Kiel do not appear on behalf of Persel's clients in court. If Persels' clients require substantive bankruptcy advice or assistance, Corwin and Kiel refer them to other lawyers. Corwin and Kiel do not handle funds or fees from Persels' clients or keep billing records. Client funds are handled exclusively by Persels and Consumer Law Associates, LLC, another LLC that is owned by the same two attorneys that own Persels.

During the period between January 26, 2009 and February 18, 2012, CareOne referred 1,801 Oregon consumers to Persels. On behalf of Persels, Corwin and Kiel conducted initial consultations with those 1,801 consumers. Some of those consumers then entered retainer agreements with Persels, although the record does not disclose how many.

## C. *Procedural Facts*

On June 10, 2012, the director issued an order directing Persels to cease and desist "from violating any provision of the Oregon statutes regulating debt management service providers." The director proposed a $500,000 civil penalty for Persels' multiple acts of providing debt management services in Oregon without first registering with the director. Persels requested a contested case hearing before an administrative law judge (ALJ) from the Office of Administrative Hearings and, on the parties' cross-motions for summary determination, the ALJ rejected Persels' contentions that it was exempt from the registration requirement under the attorney exemption, and that it had only committed one violation of the law by providing debt management services without registering with the director.

Persels then filed exceptions to the ALJ's order with the director. On review of those exceptions, the director issued a final order that clarified and affirmed the ALJ's order. Pertinent to the primary issue on appeal, the director concluded that Persels was not exempt from the registration requirement under the attorney exemption. The director reasoned that the word "attorney" in the context of ORS 697.612(3)(b) refers to an individual licensed to practice law in Oregon, and does not refer to a law firm, thereby precluding Persels from availing itself of the exemption. Alternatively, the director reasoned that, even if Persels could qualify as an "attorney" for purposes of ORS 697.612(3)(b), Persels did not provide debt management services "only incidentally in the practice of law" under ORS 697.612(3)(b) and OAR 441-910-0005(1) and, as a result, did not qualify for the attorney exemption for that independent reason.

Having determined that Persels was not exempt from the registration requirement, the director further concluded that Persels violated ORS 697.612(1) each time it provided an initial consultation to a consumer without having registered as required by statute. Because Persels scheduled 1,801 initial consultations with consumers during the period extending from January 26, 2009 to February 18, 2012, the director determined that Persels committed 1,801 violations of ORS 697.612(1), permitting a penalty of up to $9,005,000. The director further determined that, under those circumstances, the proposed penalty of $500,000—which was well below the total amount authorized in light of the number of violations—was permissible and appropriate because of the duration of time that Persels had been offering its services without registering with the director and the large number of times that it had provided debt management services without having registered.

Persels petitioned for review of the director's final order. ORS 183.482. On review, Persels contends that the director erred in concluding that the attorney exemption does not apply to Persels, and also in concluding that Persels committed more than a single violation of ORS 697.612(2).

### III. ANALYSIS

A. *Attorney Exception*

We start with Persels' contention that the director erred when it concluded that Persels was not exempt from the registration requirement under ORS 697.612(3)(b). That provision, as mentioned, exempts some attorneys who provide debt management services from registering with the director, namely, "[a]n attorney licensed or authorized to practice law in this state, if the attorney provides a debt management service only incidentally in the practice of law." ORS 697.612(3)(b). As noted, the director reasoned that the exception does not apply to Persels because Persels—a law firm—is not "an attorney" within the meaning of the statute and, alternatively, that even if the exception could apply to a law firm, Persels would not qualify for it because Persels does not provide its debt settlement services "only incidentally" to the practice of law.

On review, Persels contends that the director's analysis of the exemption's application reflects a legal error. According to Persels, the legal question for the director was not whether ORS 697.612(3)(b), by its terms, applies to Persels. Instead, Persels argues, the legal question the director should have addressed was whether Persels' Oregon field attorneys qualified for the exception. Pointing to the statutes that govern the formation of limited liability companies and common law principles, Persels asserts that, if its two field attorneys each qualified for the exception, then Persels itself necessarily must qualify for the exception. Thus, Persels contends, a remand is required for the director to "determine whether Persels provided professional services through licensed attorneys who were exempt from the registration requirement under the factors articulated in OAR 441-910-0005(1). If so, Persels was not required to register to perform those services."

The director responds that nothing in the text or context of ORS 697.612(3)(b) suggests that the legislature intended for the exception to operate in the manner advocated by Persels. The director points out that, in establishing the various exceptions from the registration requirement, the legislature expressly excepted individual employees of a debt management service provider from the registration requirement, provided that their employer entity complied with the registration requirement. ORS 697.612(3)(a). That, the director asserts, demonstrates that "in crafting the exceptions the legislature did not *see* companies and the individuals that work for them as one and the same." (Emphasis in original.) Regardless, the director asserts that whatever the merits of Persels' argument that, in some circumstances, a law firm would be exempt from the registration requirement if its Oregon based attorneys were exempt, Persels' circumstances are such that it is clear that the legislature intended the registration requirement to cover Persels:

"Under Persels' proposed construction, unregistered debt management businesses would be entitled to the exemption simply by hiring an Oregon attorney as an independent contractor. The company would then be allowed to conduct business in Oregon free from any regulation or

oversight. That construction reads the 'only incidentally in' language out of the statute and is contrary to the remedial purposes of the statute. As noted, in 2009, the legislature narrowed the exemptions' applicability solely to Oregon attorneys who perform debt negotiation 'only incidentally in' their practice. Persels' construction would expose consumers to the kinds of abuses the debt negotiation statutes were designed to prevent."

The intended scope of the attorney exception to the registration requirement and, in particular, the extent to which a law firm might be entitled to its protection, presents a gray area of the law—one that could use clarification from the legislature or, short of that, from the director by administrative rule. Both parties make fair points on the question.

On the one hand, the director is correct that the text and context of the exception indicate that it applies to individual attorneys and not to law firms. The text of the exception does not mention law firms and, as the director points out, other exceptions differentiate between individuals and entities. *See* ORS 697.612(3). And the legislative history of the 2009 amendments (HB 2191) demonstrates that the legislature intended to broaden the scope of its regulation of the debt management services industry by sweeping in business models that might be craftily constructed to escape regulation. In other words, there is reason to think that the legislature intended for the exceptions to registration to be narrowly construed to favor registration in the face of any ambiguity.

On the other hand, the legislative history provides at least some indication that the legislature did not contemplate that the registration requirement would categorically apply to law firms. For example, bankruptcy lawyer Keith Karnes testified at several hearings in favor of HB 2191. Karnes cited his experience handling phone calls from people who had been harmed by hiring debt services companies as evidence of the need for HB 2191. Karnes' testimony suggested that he did not think that his small bankruptcy firm would be subject to regulation under HB 2191, although none of the committee members asked him

about it directly. Audio Recording, House Committee on Consumer Protection, HB 2191, May 19, 2009, at 2:11:00 (comments of Keith Karnes and Sen Larry George), https:// olis.leg.state.or.us (accessed Apr 10, 2017); *see also id.*, Feb 2, 2009, at 2:13:00; *id.*, Apr 23, 2009, at 1:45:00; *id.*, May 19, 2009, at 2:02:00. And there is no hint in the legislative history that the legislature intended to sweep a law firm into the registration requirement whenever one or more of the firm's lawyers happened to provide one of the statutorily defined debt management services, even if those services were provided only incidentally to any one lawyer's practice and the lawyer individually would otherwise be exempt from registration under ORS 697.612(3). Yet that appears to be the result compelled by the director's interpretation of the statute.

This case does not require us to resolve definitively whether the attorney exception might, in some circumstances, operate to exempt a law firm from the registration requirement. Although it is conceivable that the legislature may have intended for the exception to have some applicability to a law firm where the *only* debt management services that the firm provides—or offers to provide—are services rendered by the firm's individual attorneys "only incidentally" to those attorneys' practice of law, it is not conceivable that the legislature intended for the exemption to apply to a firm like Persels. The undisputed facts demonstrate that Persels engages in exactly the type of business that the 2009 amendments to the debt management service statutes were intended to regulate: Persels, for a fee, offers to receive and hold money from a consumer for the purpose of paying unsecured debt in full and or in part, and to negotiate with the consumer's creditors to modify the consumer's debt. Persels provides those services through nonlawyer staff, involving lawyers only when necessary. Given that business model, the fact that Persels uses local lawyers to offer those services in its initial consultations with consumers, and that those lawyers provide some services that could be characterized as the practice of law, does not persuade us that Persels is an entity that the legislature intended to exempt from the registration requirement. That is so even if it might be true that Persel's local attorneys might, themselves, be able to

avail themselves of the attorney exception.[4] Consequently, we conclude that the director did not err in determining that Persels was not exempt from registering with the director.

## B. *Number of Violations*

Persels' second assignment of error challenges the director's determination that Persels violated ORS 697.612(1) each time that it provided an initial consultation to an Oregon consumer without having registered with the director. Persels points out that, had it registered, that registration would have been valid for two years. ORS 697.632(4). From that observation, Persels reasons that "only one violation of ORS 697.612(1) could possibly occur during a two-year period." In Persels' view,

> "being unregistered in violation of ORS 697.612(1) creates a status. That status continues for as long as the entity remains unregistered. No part of the relevant statutory scheme authorizes the Division to assess multiple penalties for a continuing violation of the registration requirement, and other parts of that scheme reflect that the legislature will define when conduct constitutes multiple violations."

Therefore, Persels reasons, the director erred in imposing a civil penalty on Persels in excess of $5,000 under ORS 697.832. Because, in Persel's view, it committed but one violation of ORS 697.612, ORS 697.832 limited its civil penalty exposure to $5,000.

Persels' argument does not square with the plain text of ORS 697.612(1). That statute does not indicate that the legislature conceptualized the provision as creating a "status," such that the failure to register would constitute

---

[4] We are skeptical on this point. Under the director's rule defining the exception, an attorney is entitled the exception if "[t]he attorney only provides the services to a client of the attorney and only while acting as an attorney on behalf of the client." OAR 441-910-0005(1)(a). The debt management services on which this case is predicated, however, were rendered during the initial consultations between the field attorneys and the consumers referred to Persels by CareOne— that is, at a time when it is questionable whether the consumers had become clients of the firm or the attorneys that worked for it, as well as questionable whether the attorneys were "only * * * acting as an attorney on behalf of the client," in view of the marketing function of those sessions. However, we need not, and do not, resolve the issue.

a single ongoing violation, or that the legislature intended the failure to register to result in a violation of ORS 697.612 only once every two years. Contrary to Persels' conception, ORS 697.612(1) does not, on its face, punish the status of being unregistered. Instead, by its terms, the statute targets conduct by persons who are not registered: the conduct of "engag[ing] in business in this state in the course of which the person *** performs a debt management service" or the other related actions listed in the statute. ORS 697.612(1). Viewed in that manner, each time Persels, while unregistered, "engage[d] in business in this state in the course of which" Persels "performed a debt management service," Persels violated ORS 697.612(1).

Apart from its argument that the failure to register is a "status" such that an unregistered debt management services provider can only violate ORS 697.612(1) once every two years—an argument that we have concluded is not tenable in view of the text of the statute—Persels does not otherwise argue that the director's determination that it violated ORS 697.612(1) each time it held an initial consultation with a new Oregon consumer is predicated on a misreading of that statute. We therefore reject Persels' contention that the director erred in determining that it violated ORS 697.612(1) each time it held an initial consultation with a new Oregon consumer, for a total of 1,801 violations.

## IV. CONCLUSION

For all of those reasons, we conclude that Persels has not demonstrated legal error by the director.

Affirmed.